FILED
RICHARD W. NAGEL
CLERK OF COURT

20 NOV -9 AM II: 15

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

**IN THE UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT OF
OIHO WESTERN DIVISION**

**ERIC DETERS**

      **Plaintiff**

vs.

**MATTHEW HAMMER, ET
AL**

      **Defendants**

**CASE NO. 1:20CV362**

**(Judge Black)
(Magistrate
Bowman)**

**PLAINTIFF'S RESPONSE IN
OPPOSITION TO MOTION
OF DEFENDANTS FOR
SUMMARY JUDGMENT**

Now comes Eric C. Deters ("Plaintiff" or "Eric Deters"), and hereby respectfully submits his Response in Opposition to Motion of Defendants For Summary Judgment (the "Motion") filed by Matthew Hammer ("Hammer") and McKenzie & Snyder, LLP ("McKenzie & Snyder") (Hammer and McKenzie & Snyder are each a "Defendant" and collectively "Defendants") (the "Response"). In support of his Response, Plaintiff provides his Affidavit.

## I.    Factual Background

On May 6, 2020, Plaintiff initiated this action against Matthew Hammer ("Hammer") and Hammer's employer McKenzie & Snyder, LLP ("McKenzie & Snyder") by filing a complaint asserting claims of libel and slander and invasion of privacy and false light against Hammer and a claim of vicarious liability against McKenzie and Snyder. *Dkt. No. 1.*

Defendants each filed a separate answer. *Dkt. Nos. 7 & 8.*

On October 19, 2020, Defendants filed the Motion seeking dismissal of this action arguing that absolute immunity is afforded to Hammer's statements because they were made in the course of a judicial proceeding in Kentucky. *Motion, at pp. 5 & 6.* Plaintiff does not dispute the statements of facts provided by Defendants in the Motion and will refer to the relevant facts during the course of his argument.

1

Defendants, however, misconstrue Plaintiff's allegations. Plaintiff brings these allegations, in an Ohio court under Ohio law and as an employee of Deters Law and a victim's advocate, not as a lawyer. The privilege that Defendants claim protect them does not apply.

In addition, assuming, arguendo, that the statements at issue were made in the course of a judicial proceeding, the immunity does not apply because they were not made in good faith. Hammer knew *ab initio* that the statements were false.

**The law can never be that an attorney, governed by another state's bar, can intentionally with malice lie about and defame someone and the "someone" who is a victim does not have legal recourse by a defamation claim. If that were to be the case, an attorney is free to file and defame with impunity about others- including his "enemies."**

## II.   Legal Standard

### 1.   Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only

disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

In addition, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. 2505. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

When viewed in the light most favorable to him, Plaintiff has presented "significant probative evidence" to demonstrate a genuine issue of fact as to his claims and that evidence presents a sufficient disagreement to require that a jury to make a determination on these claims. *Anderson*, 477 U.S. at 251-52, 106 S.Ct. 2505.

### A. **Tort Claims**

### (i)    **Defamation**

Plaintiff first brought a defamation claim against Hammer under Ohio law. Defamation is the publication of a false statement of fact "made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7, 651 N.E.2d 1283, 1289 (Ohio 1995).

To establish a defamation claim under Ohio law, the plaintiff must establish that: (1) a false statement of fact was made, (2) the statement was defamatory, (3) the statement was published, (4) plaintiff suffered injury as a proximate result of the publication, and (5) defendant acted with the requisite degree of fault in publishing the statement. *See Am. Chem. Soc'y v. Leadscope, Inc.,* 133 Ohio St.3d 366, 389, 978 N.E.2d 832, 852 (Ohio 2012) (quoting *Pollock v. Rashid*, 117 Ohio App.3d 361, 368, 690 N.E.2d 903, 908 (Ohio Ct. App. 1996)). A "private plaintiff must show that the statement was false and that the defendant was at least negligent in publishing the false statement." *Kassouf v. Cleveland Magazine City Magazines,* 142 Ohio App.3d at 421, 755 N.E.2d at 982-83 (Ohio Ct. App. 2001) (citing *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 766, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985)).

In this case, Plaintiff, as an employee of Deters Law, asserts that, on or about May 15, 2018, Hammer made the following statements to third parties, which statements where later published in a report:

(i)     Plaintiff would send an investigator to search for victims of the now infamous Doctor Durrani even when Plaintiff had already too many cases to manage. Cplt. at ¶ 13.

(ii)    Plaintiff or someone at Plaintiff's direction forged Hammer's signature on an affidavit of disqualification against Justice O'Connor and filed the affidavit. Cplt. at ¶ 14.

4

(iii)    Plaintiff regularly filed documents in Hamilton County courts bearing Hammer's name without Hammer ever seeing these documents. Cplt. at ¶ 15.

Despite having made these statements, Hammer testified under oath that he had no tangible proof to substantiate any of the above statements and that at the time, he took no remedial measures to correct any of the bad acts that he later accused Plaintiff of engaging in and could not identify a single document that was alleged filed without his permission. Cplt. at ¶ ¶ 13-19. Further, Plaintiff has documentary evidence that Hammer signed the affidavit willingly. Cplt. at ¶ 14. Finally, Plaintiff has alleged that he suffered mental anguish and injury to his personal and business reputation as well as economic damages. Cplt. at ¶ 24.

The above cited statements were statements of facts, that were false, defamatory and injured Plaintiff. Further Hammer knew that they were false and uttered them with intent to harm Plaintiff's personal and business reputation.

Hammer has failed to prove the absence of genuine issues of material fact and his entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23. Conversely, Plaintiff has presented "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

### (ii)    False Light; Invasion of Privacy

Plaintiff also brings a false light/invasion of privacy claim against Hammer. Ohio law provides that one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *Welling v. Weinfeld*, 113 Ohio St.3d 464, 473, 866 N.E.2d 1051, 1059 (2007).

The statements made by Hammer to third parties, including to his wife, colleagues, and friends accusing Plaintiff of forgery are highly offensive to a reasonable person. They place Plaintiff in an unreasonable and objectionable false light and affect his personal and business integrity. In addition, Hammer knew those statements were not true as he was unable to produce any evidence of their truth and admitted that at the time, he failed to do anything to correct the alleged bad acts of Plaintiff. *Exhibit 1, page 10.*

Plaintiff has presented sufficient evidence to demonstrate that an issue of fact exists as to Plaintiff's false light/invasion of privacy claim that is for a jury to decide. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

### (iii)   Vicarious Liability

The final claim brought by Plaintiff is a claim for vicarious liability against McKenzie & Snyder, Hammer's employer.

In Ohio, "[t]he respondeat superior doctrine makes an employer or principal vicariously liable for the torts of its employees or agents." *Auer v. Paliath*, 17 N.E.3d 561, 564 (Ohio 2014) (citing *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 438, 628 N.E.2d 46 (Ohio 1994)). The doctrine is triggered only if the employee's tort was "'committed within the scope of employment.' " *Auer*, 17 N.E.3d at 564 (quoting *Byrd v. Faber*, 57 Ohio St.3d 56, 58, 565 N.E.2d 584 (Ohio 1991)).

"Whether an employee is acting within the scope of his employment is a question of fact to be decided by the jury" based "upon a multitude of considerations and fact-specific inquiries." *Auer*, 17 N.E.3d at 565–66 (citation, quotations, and alteration omitted). "First, the agent's tortious acts must have been 'an ordinary and natural incident or attribute of the service to be rendered, or a natural, direct, and logical result of it.'" *Id.* at 566 (quoting *Posin v. A.B.C. Motor Court Hotel, Inc.*, 344 N.E.2d 334, 339 (Ohio 1976)). Second, and "[m]ost importantly, in cases 'where the tort is intentional, the behavior giving rise to the tort must be 'calculated to facilitate or promote the

6

business for which the servant was employed.'" *Auer*, 17 N.E.3d at 566 (quoting Byrd, 565 N.E.2d at 587). "Therefore, 'the determination of whether conduct is within the scope of employment or outside the scope of employment necessarily turns on the fact-finder's perception of whether the [employee] acted, or believed himself to have acted, at least in part, in his employer's interests.' " *Auer*, 17 N.E.3d at 566 (quoting *Ohio Govt. Risk Mgt. Plan v. Harrison*, 874 N.E.2d 1155, 1159 (2007 Ohio)). "The agent's motivations and the self-interested nature of her actions are therefore necessary considerations in a scope-of-agency inquiry." *Auer*, 17 N.E.3d at 566 (citations omitted).

Here, McKenzie & Snyder' s areas of practice in areas are similar to and overlap with those of Deters Law. In particular, McKenzie & Snyder's areas of practices include personal injury. It is easy enough to see how defaming and disparaging Plaintiff, the spokesman for Deters law and placing him in a false light benefit Hammer and his employer, McKenzie & Snyder.

Plaintiff has presented sufficient evidence to demonstrate that an issue of fact exists as to Plaintiff's vicarious liability claim that is for a jury to decide. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

## B. Hammer's Statements Were Not Made in Good Faith and Are Not Privileged

Hammer's sole argument in the Motion is that summary judgment is appropriate because his statements are privileged under both Kentucky and Ohio law as being made in the course of a bar disciplinary proceeding. Therefore, he reasons, he is immune from civil liability. Hammer's argument fails because the privilege afforded by law is not nearly as broad as Hammer states. No one gives immunity for defamation.

At the outset, it is essential to determine if Hammer's statements fall under either Ohio or Kentucky law.

Eric Deters is under suspension in Kentucky and permanently retired in Ohio. The

proceeding relied upon by Defendants for immunity is the investigation by the Kentucky Bar Association.

Hammer is an Ohio attorney who spoke to a Kentucky Bar Claims investigator. All the statements that Hammer made to the Kentucky Bar Claims investigator were in made in the state of Ohio. *Exhibit 1, page 9.*

Hammer cannot rely on Ohio's Immunity law because Ohio Law only applies its immunity to inquiries before the Ohio Bar Association. Since Hammer's statements were made to a Kentucky Bar Association investigator regarding a Kentucky Bar Association investigation, he cannot be afforded immunity designated for Attorneys who are reporting to the Ohio Bar Association. Because none of Hammer's statements were made in response to judicial inquiries before the Ohio Bar Association, there is no immunity based upon Ohio law.

Similarly, Kentucky immunity does not apply to Hammer because this case is based entirely on Ohio law. All of Hammer's tortious behavior took place in Ohio. Neither the Kentucky Supreme Court Rules nor law apply in this case. Kentucky cannot grant immunity in actions based in Ohio law and venued in an Ohio Federal Court.

## (i.) Immunity under Kentucky Law Does Not Apply to Hammer because KY Law Requires a Lawyer Act in Good Faith

Hammer is not a Kentucky attorney. His tortious behavior was committed in Ohio. Hammer fails to prove or provide any authority why Kentucky law should apply to this proceeding, which is based entirely on Ohio law.

However, even if this Court were to find that Kentucky law and Supreme Court Rules regarding immunity should be applied to Hammer, which it should not, those rules would not protect Hammer's bad faith lies. In his motion, Hammer cites to the Kentucky Supreme Court Rule ("SCR") 3.130/Rule of Professional Conduct ("RPC") 3.130 (8.3)(d) which in relevant part

states:

> A lawyer *acting in good faith* in the discharge of the lawyer's professional responsibilities required by paragraphs (a) and (b) or when making a voluntary report of other misconduct shall be immune from any action, civil or criminal, and any disciplinary proceeding before the Bar as a result of said report, except for conduct prohibited by Rule 3.4(f).

SCR 3.130, RPC Rule 3.130(8.3) (emphasis added).

Further SCR 3.310, RPC 3.4(f)carves an exception to the good faith immunity if the reporting attorney  (f) presents, participates in presenting, or threatens to present criminal or disciplinary charges solely to obtain an advantage in any civil or criminal matter[.]"KY ST S CT RULE 3.130, RPC Rule 3.130(3.4)

Thus, under Kentucky law, in order to benefit from the immunity from any legal action, a lawyer who reports alleged misconduct by another lawyer has to both act in good faith and without intent to obtain an advantage in a civil or criminal matter.

Hammer fails both tests.  Hammer made the statements at issue despite admitting he had no concrete proof to substantiate his allegations and had done nothing at the time to rectify any of Plaintiff's alleged misconduct. *Exhibit 1, page 10*. Also, Hammer's actions evince the retaliatory attitude of a disgruntled employee.  Hammer (and McKenzie) also clearly have an incentive to disparage his former employer to try to entice Durrani clients to come with him to his new employer.

In any event, Plaintiff has raised a material issue of fact as to whether Hammer acted in good faith so as to be protected by SCR 3.130, RPC Rule 3.130(8.3). SCR 3.130, RPC Rule 3.130(8.3). *See Hill v. Adkins*, 59 F. Supp. 3d 814, 820 (E.D. Ky. 2014) (factual questions exist as to whether a police officer acted in good faith so as to be immune from liability).

Hammer also cites to SCR 2.009 which grants immunity to *"any person*  who communicates information to a member of the Board, Committee or its affiliates concerning *an applicant for admission to the Kentucky Bar* shall be granted immunity from all civil liability

which might result from said communications" SCR 2.009. This rule has no relevance in this case. Hammer is not "any person", he is a lawyer who allegedly was discharging his professional responsibilities in reporting alleged misconduct a of a suspended lawyer, not an applicant to the bar.

### (ii.) Immunity Under Ohio Law Does Not Apply to Hammer

If this Court were to find that immunity should apply and apply Ohio law (which it does not), there is an issue of facts as to whether Hammer's statements are privileged.

Under Ohio law, "[a] statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is *reasonably related to the proceeding in which it appears." Hecht v. Levin*, 1993-Ohio-110, 66 Ohio St. 3d 458, 460, 613 N.E.2d 585, 587 (1993) citing *Surace v. Wuliger* (1986), 25 Ohio St.3d 229, 25 OBR 288, 495 N.E.2d 939, syllabus (emphasis added).

As noted above, the statements at issue relate to Plaintiff himself or someone at Plaintiff's behest forging Hammer's signature on an affidavit of disqualification and filing documents in courts under Hammer's name without Hammer's consent. These statements were made to an investigator for the Kentucky Bar Association and used by the Kentucky Bar Association Board of Governors to deny Plaintiff's reinstatement. Cplt. ¶ 18.

There is no allegation in the Complaint and no factual support in the Motion explaining why and how the defamatory statements made by Defendants are related to any judicial proceeding in Ohio, much less be "reasonably" related to one.

The absence of any evidence related to any judicial proceeding in Ohio creates a material of fact inappropriate to resolve at the summary judgment level.

### III.    Conclusion

Ohio Attorney Matt Hammer alleged Eric Deters, the office manager of a rival law firm,

forged, or had another undisclosed individual forge, his signature on a filing to the Supreme Court of Ohio. Attorney Matt Hammer accused Eric Deters, or other undisclosed individuals, of forging his signature on documents filed in Hamilton County. Hammer not only made these allegations to his family, wife, and colleagues, but to a Kentucky Ethics Committee Investigator in an attempt to smear Eric Deters and prevent him from reinstatement to practice law in Kentucky.

Hammer's allegations are provably false. Hammer testified under oath that he had no tangible proof to substantiate any of the above statements and that at the time, he took no remedial measures to correct any of the bad acts that he later accused Eric Deters of engaging in and could not identify a single document that was alleged filed without his permission.

An analysis of the Deters Law network by John Horst, an IT specialist who maintains a secret clearance with the United States Government, proves conclusively that Matt Hammer not only received an unsigned version of the Third Motion to Disqualify Chief Justice Maureen O'Conner, but then Hammer sent a signed version of the document to both his work *and* personal email. *Exhibit 2.* Dr. Fenoff, a handwriting expert, has opined that the signature on the Third Motion to Disqualify Chief Justice Maureen O'Conner is verifiably Matt Hammer's signature. *Exhibit 3.*

Despite Hammer's bad faith lies, Eric Deters repeatedly requested that Hammer retract his false statements. Not wanting to hurt the career of a young former co-worker, Eric even offered not to pursue disciplinary action for Hammer's lies. Hammer refused.

Now, Hammer desperately tries to avoid responsibility for his boldfaced lies by claiming immunity in both Ohio and Kentucky. Neither apply. As a federal diversity case under Ohio law, Hammer cannot invoke Kentucky immunity. Similarly, Ohio immunity only applies to Ohio Bar investigations and the investigator that Hammer lied to was from Kentucky and working the Kentucky Bar Association. Hammer enjoys no immunity.

Accordingly, Plaintiff requests this Court DENY Defendant's Motion for Summary

Judgement.

                                       Respectfully,

                                       Eric C. Deters, Pro-Se
5247 Madison Pike
Independence, Ky 41051
Phone: (859) 363-1900
Fax: (859) 363-1444
Email: eric@ericdeters.com

12

# EXHIBIT 1

# Answers to Plaintiff Eric Deters' First Set of Interrogatories Propounded to Defendant Matthew Hammer

IN THE COURT OF COMMON PLEAS
BUTLER COUNTY, OHIO

ERIC DETERS ) CASE NO. CV 2019 08 1711
)
      Plaintiff, ) JUDGE KEITH SPAETH
) **ANSWERS TO**
  v. ) **PLAINTIFF ERIC DETERS' FIRST**
) **SET OF INTERROGATORIES**
MATTHEW HAMMER, et al. ) **PROPOUNDED TO DEFENDANT**
) **MATTHEW HAMMER**
      Defendant. )
)

Plaintiff Eric Deters (hereinafter "Plaintiff"), by and through counsel, and pursuant

to Rule 33 of the Ohio Rules of Civil Procedure, hereby propounds the following First Set

of Interrogatories to Defendant to be answered under oath within twenty-eight (28) days

of service hereof. Consistent with the provisions of Rule 26(E) of the Ohio Rules of Civil

Procedure, these Interrogatories shall be deemed to be continuing Interrogatories

requiring supplementation of responses to include information acquired by Defendants

or Defendants' attorneys after the original answers.

### DEFINITIONS

"You," "Your", and "Defendant" refers to Matthew Hammer.



EXHIBIT
2

## INTERROGATORIES

### INTERROGATORY NO. 1:

State:

1.  Your full name, date and place of birth, Social Security number, and all addresses where you have resided during the last 10 years.

### ANSWER:

Matthew James Hammer
11-29-1988 Norwich Ct.
043849897

6793 Le Conte Ave.
Cincinnati, OH

1261 Hickory Woods Dr.
Loveland, OH

1702 Secor Rd.
Toledo, OH

### INTERROGATORY NO. 2:

State whether:

1.  You are now or have ever been married, including the date of each marriage, the full name of each spouse, the date each marriage terminated (if applicable), and how each marriage was terminated.

### ANSWER:

Objection, over objection and without waiving the same, Kaitlyn Hammer and I married on 5-20-2017.

_Jack C. McGowan_
Jack C. McGowan

### INTERROGATORY NO. 3:

State the name, address, and date of birth of each of Defendant's next-of-kin, (as defined pursuant to R.C. 2125.02) whether natural, by marriage or adopted.

**ANSWER:**

Andrew Hammer 7-2-91
**INTERROGATORY NO. 4:**

Set forth in detail:

1.  Your educational history starting with high school, by identifying the name of every educational institution you have attended, dates of attendance, date of graduation, and degrees received, if applicable;

**ANSWER:**

Archbishop Moeller High School
University Of Dayton
University of Toledo College of Law

**INTERROGATORY NO. 5:**

Set forth in detail:

1.  Your work history for the last ten (10) years, by stating the name of each employer, the inclusive dates of each such employment, and the nature of the work you performed;

**ANSWER:**

University of Dayton- Research Assistant
City of Toledo Prosecutor's Office
Summit County Prosecutor's Office- Juvenile Division
Deters Law
McKenzie & Snyder

**INTERROGATORY NO. 6:**

1.  Set forth in detail any email account that you have created or used over the past ten (10) years. Next to each email account, state:

    a.  The date the email account was first created;

    b.  Who created the email account;

    c.  Why the email account was created;

    d.  What the email account was used for;

3

   e. Who (other than you) had access to the email account and how they had access;

   f. How many times the password to the email account was changed;

   g. When the password for the email account was changed

   h. If the email account is still active; and if not active, when the email account stopped being active

**ANSWER:** Objection, over objection and without waiving the same,

mhammer@ericdeters.com
created for work and used for work by Eric Deters
Eric Deters had access along with the person who handled the account at "Skynet Innovations".
I don't recall if/when the password was changed.
I don't know if it is still active.

hammermj88@gmail.com
created for personal use and personal email by myself
I have access to this email and I believe I left it logged in at Eric Deters office in Independence, Kentucky multiple times.
I don't recall exactly when the password was changed, but I believe it has been the same for quite some time. Still active.

matt.hammer@notes.dayton.edu
created for educational use by the IT people at UD
I had access to this email.
I don't recall.
I doubt it is still active.

Matt.Hammer@mckenzie-snyder.com
Work... M&S... active

Matt@mslaw.legal
Work... M&S... active

Jack C. McGowan

4

**INTERROGATORY NO. 7:**

Typically, how often do you check your email accounts in a day?  During you time as an employee at Deters Law Firm, how often did you check your email?

**ANSWER:**

I currently check my personal email once or twice a day.  I check my work email 5-10 times a day.

At Deters Law.  Constantly.  Over 100 times a day.  Probably once every 3-5 minutes from 6:30AM-11PM.

**INTERROGATORY NO. 8:**

Review the attached emails in Exhibit 1.  Did you receive these emails?  Did you respond to these emails?  Please indicate which emails you received and which emails you did not receive.

**ANSWER:**

I cannot recall for sure.

**INTERROGATORY NO. 9:**

Review the attached emails in Exhibit 2.  Did you send these emails?  Please indicate which emails you sent and which emails you did not send.

**ANSWER:**

I cannot recall for sure.

**INTERROGATORY NO. 10:**

Did you ever tell Eric Deters, Charles Deters or another employee or representative of Deters Law Firm that you would not sign the third affidavit of disqualification against Maureen O'Connor.  If yes, who did you tell and when did you tell them?

**ANSWER:**

I told Eric Deters multiple times, the day he decided to have me sign it. I told him to advise his father, which I do not know if he did. I would have told Charles Deters, but I was unable to contact him. I had no telephone number, address, email, nothing of his. He had email addresses but Eric Deters created them "for" his father.

I also discussed my unwillingness to sign with my law clerk, Christopher McCaughey that day at the same time.

**INTERROGATORY NO. 11:**

Have you ever given a non-attorney permission to sign your name on a legal document? If so, when and for what legal documents?

**ANSWER:**

Yes, I cannot remember specifically what documents. Examples have been letters and pleadings. I have never given anyone permission to sign an affidavit on my behalf.

**INTERROGATORY NO. 12:**

Have you ever given a non-attorney blanket permission to sign any legal document they saw fit with your name? Is so, who was the non-attorney and when did you give the permission. When, if ever, did you revoke the permission?

**ANSWER:**

I gave Eric Deters permission to file certain, basic pleadings in my name early on in my employment at Deters Law in 2015. I quickly revoked that permission after it began to get abused.

**INTERROGATORY NO. 13:**

When did you become aware that the Third Affidavit of Disqualification against Maureen O'Connor was filed?

**ANSWER:**

I would have received them on or near the dates they were filed and notice sent out.

**INTERROGATORY NO. 14:**

What actions did you take when you became aware of the Third Affidavit of Disqualification against Maureen O'Connor was filed?  When did you take the actions?

**ANSWER:**

I did not take any actions.

**INTERROGATORY NO. 15:**

During your time as an employee of Deters Law Firm, did you ever refuse to sign a document presented to you?  If yes, please identify what document you refused to sign, when you refused to sign it, and how you communicated your refusal to the rest of Deters Law Firm.

**ANSWER:**

I had done so a couple times.  I would have advised Eric Deters via email, text, in person, or telephone call.  He would proceed to verbally abuse and berate me until I eventually signed it or a version thereof.

**INTERROGATORY NO. 16:**

During your time at Deters Law, did you ever lie or make a misrepresentation about someone accessing your work computer, your email, or the communal drive?  If you did, identify when you made the lie and who you made the lie to.

**ANSWER:**

Objection, this interrogatory is overly broad.  Over objection and without waiving the same, all of the statements which are at issue in this action that were made were true when made to best of my knowledge with the exception of Exhibit 10 entitled Third Affidavit of Matthew J. Hammer on the Disqualification of Chief Justice Maureen O'Connor in the Dr. Durrani Cases which I did not sign.

Jack C. McGowan

7

**INTERROGATORY NO. 17:**

Please review exhibits 1-13. Make a list of the documents, indicating;

1.     if the signature on the document is your signature.

2.     If it is your signature, did you sign it?

**ANSWER:**

Objection, over objection and without waiving the same, each of the exhibits is a copy and without reviewing the original document, I am unable to respond with confidence regarding each exhibit except for Exhibit 10 which does not appear to be my signature.

Jack C. McGowan

**PRODUCTION REQUEST NO. 1:**

Please provide an example of your current full signature. If you have used any other signatures in the past, please provide examples of those signatures and the dates that you used those signatures. Additionally, provide an example of how you initial documents.

**RESPONSE:**

See attached Exhibit A.

**INTERROGATORY NO. 18:**

After leaving Deters Law Firm, did you contact any of Deters Law Firm's clients? If so, provide the date of the contact and a description of what was discussed.

**ANSWER:**

No. Some clients contacted me because apparently Deters represented I was in bad health. I merely advised, pursuant to my professional obligation, that I had moved on from the firm and I would be working for M&S. If asked, I would only advise that their options were to stay, follow me, or get a new lawyer.

8

**INTERROGATORY NO. 19:**

During your time as an employee of McKenzie and Snyder did you ever contact a Deters Law Firm client? If so, provide the date of the contact and a description of what was discussed.

**ANSWER:**

No, I did not initiate contact. Many former/current Deters' clients have contacted me wanting to leave Deters and hire me.
These would be Jeff McMahon (March 2018), Trista Tyler (Oct 2019), Rebecca and Alan Britenstien (mid-2018), Ronald Schuster (mid/late-2018),

**INTERROGATORY NO. 20:**

Where did you meet with Carl Christiansen for his May 15, 2018 interview? Who was present for the interview between yourself and Carl Christiansen?

**ANSWER:**

Panera on Beechmont. Nobody else was present except for patrons of the restaurant who were not within earshot.

**INTERROGATORY NO.21:**

During your interview with Carl Christiansen, you indicated to investigator Christiansen that you received notices from Hamilton County that notice of affidavits of merit were filed in your name that you had no knowledge of. What date did you discover these alleged fraudulent filings? What did you do to correct the alleged fraudulent filings? Who was the secretary who you confronted about filing documents with the court in your name?

**ANSWER:**

I can't recall. I would have received them on the dates they were filed and notice went out. Initially I discussed it with Deters and subsequentially I advised secretaries Loretta Little and Sarah York, multiple times via telephone, to not submit documents for filing or letters to counsel/clients without my permission. This was a regular occurrence.

**PRODUCTION REQUEST NO. 2:**

Provide all the affidavits of merit filed in Hamilton County filed in your name that you allege that you had no knowledge of.

**RESPONSE:**

Not in possession of any.

**INTERROGATORY NO. 22:**

What steps have you taken to correct the affidavits of merit that you allege you had no knowledge of?

**ANSWER:**

None out of fear of retaliation.

**PRODUCTION REQUEST NO. 3:**

Provide all motions, correspondences and any other document that you used to correct the Hamilton County affidavits of merit that you allege you had no knowledge of.

**RESPONSE:**

None out of fear of retaliation.

**INTERROGATORY NO. 23:**

State whether you or your employers McKenzie and Snyder have spoken about Eric Deters or Deters Law relating in any way to the incident complained of, and state the name of the employee or former employee, the date of each conversation (approximate if necessary) and provide a summary of the content of each conversation.

**ANSWER:**

Objection, over objection and without waiving the same, after receiving correspondence from Eric Deters concerning me, Chris Snyder and Kyle McKenzie had a meeting with me which I believe to have occurred in June, 2019. Since the filing of this lawsuit, there have been discussions concerning the lawsuit. The content of all discussions is confidential and privileged.

Jack C. McGowan

10

**INTERROGATORY NO. 24:**

State the name and last known address of each and every person whom Defendants intend to call as a lay witness at trial.

**ANSWER:**

This decision has not been made. I will comply with the deadline established by the Butler County Court of Common Pleas and will supplement this response as those who are going to provide testimony at trial are finally determined.

**INTERROGATORY NO. 25:**

State the name and address of each and every person whom Defendants expect to call as an expert witness at trial and state the following:

1. The subject matter on which the expert is expected to testify; and

2. A summary of each opinion.

**ANSWER:**

I have not made a determination as to whether I will call one or more experts but will timely supplement this response in accordance with the deadline established by the Butler County Court of Common Pleas.

**INTERROGATORY NO. 26:**

Describe each document that Defendants intend to offer as evidence at trial.

**ANSWER:**

I have not determined the documents that will be offered as evidence at trial but reserve the right to timely supplement this response.

**PRODUCTION REQUEST NO. 4:**

Provide each document that Defendants intend to offer as evidence at trial.

**RESPONSE:**

I have not determined the documents that will be offered as evidence at trial but reserve the right to timely supplement this response.

**INTERROGATORY NO. 27:**

Please state whether you have ever been charged or convicted of a crime punishable by imprisonment (regardless of whether the individual was imprisoned) under the law of any state of the United States of America and, if so, state the particular crime, the court in which sentence was imposed, the date thereof, and the length and type of sentence imposed (including probation).

**ANSWER:**

Objection, over objection and without waiving the same, I was convicted in the Area I Court of Butler County, Ohio at the approximate age of 20 for underage possession of an alcoholic beverage.

Jack C. McGowan

**INTERROGATORY NO. 28:**

Please state whether you, or anyone closely acquainted with you, has kept or participated in creating any notes, calendars, diaries, videotapes, photographs, "day-in-the-life" films, e-mails, audiotapes or similar notations which in any way pertain to or involve the facts or events in this lawsuit, or any of the claims presented in this lawsuit. For each such item, please give a general description of the item, the length of the item, the author(s) and timeframe when the item was created.

**ANSWER:**

Objection, over objection and without waiving the same, this interrogatory is overly broad and unduly burdensome. Furthermore, it is not reasonably calculated to lead to the discovery of admissible evidence. Any and all items possibly covered by this request and created since this action was threatened are privileged.

Jack C. McGowan

**INTERROGATORY NO. 29:**

After Attorney Jim Triona joined Deters Law Firm, did you begin signing your name with a fountain pen?

**ANSWER:**

Jim Trinoa gave me a fountain pen, and I have used it on occasion to sign items, although not exclusively.

12

**INTERROGATORY NO. 30**

Did you use that fountain pen to sign the Third Affidavit of Disqualification of Maureen O'Conner?

**ANSWER:**

Objection, over objection and without waiving the same, I did not sign that document.

Jack C. McGowan

**PRODUCTION REQUEST NO. 5:**

Please provide copies of any and all malpractice insurance policies that you are covered by, both individually and/or through your employment at McKenzie and Snyder.

**RESPONSE:**

Previously provided on January 3, 2020.

/s/Alexander J. Petraglia
Alexander Petraglia (0093748)
441 Vine Street, 44th Floor
Cincinnati, OH 45202
apetraglia@ericdeters.com
(610) 952-8259 – Phone
(859) 363-1444 – Fax

*Attorney for Eric Deters*

13

## PROOF OF SERVICE

A copy of the foregoing was served on January 14, 2020, pursuant to Civ.R. 5(B)(2)(c) by mailing it by United States Mail, and pursuant to Civ.R. 5(B)(2)(f) by sending via e-mail, to Jack C. McGowan, attorney for defendants Matthew Hammer and McKenzie and Snyder.

Jack C. McGowan (0005619)                     *Attorney for Defendant*
246 High St
Hamilton, OH 45011-2754
(513)844-2000
(513)868-1190(Fax)
jcm@jcmcgowan.com


/s/ Alexander J. Petraglia
Alexander J. Petraglia
*Attorney for Eric Deters*

14

I, Matthew Hammer, being first duly cautioned and sworn, state that the foregoing responses to Plaintiff Eric Deters' First Set of Interrogatories are true to the best of my knowledge and belief.

_Matthew J Hammer_

Matthew Hammer

---

STATE OF OHIO      )
                           ) ss.

COUNTY OF BUTLER   )

Sworn to before me and signed in my presence this 15th day of January, 2020.

_Jennifer L. Hover_
Notary Public

**JENNIFER L. HOVER**
**Notary Public**
**In and for the State of Ohio**
**My Commission Expires**
**Feb. 23, 2024**

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served upon Alexander J. Petraglia, Esq., 441 Vine Street, 44th Floor, Cincinnati, OH 45202 by ordinary U.S. mail this 29th day of January, 2020.

Jack C. McGowan

# EXHIBIT 2
# Expert Report of John Horst

XANESTI
*Right the first time*

**ERIC DETERS v MATTHEW HAMMER & McKENZIE & SNYDER**
Expert Report of John Henry Horst, CISSP®-ISSAP®
Xanesti Technology Services, LLC

1            **DECLARATION OF JOHN HENRY HORST, CISSP®-ISSAP®**

2        I, John Henry Horst, of San Diego, California, declare:

3          I am submitting this declaration in support of the

4 Plaintiff's claim that the Defendant falsely stated that the

5 Plaintiff forged his signature, or directed someone to do so, on

6 a particular legal filing.

7          I am the founder and owner, together with my wife, of

8 Xanesti Technology Services, LLC, a California company providing

9 cyber security support to the Department of Defense (DOD). I

10 have over 20 years' information technology experience, the most

11 recent 15 years being in support of DOD programs developing

12 software systems and application, installing the same on-board

13 U.S. Navy ships, training users in the same, and consulting with

14 other software development teams on secure coding practices.

15          I currently support the Defense Manpower Data Center (DMDC)

16 and Defense Human Resources Agency (DHRA) consulting with the

17 Information System Security Officer (ISSO) to ensure compliance

18 with the National Institute of Standards and Technology (NIST)

19 Risk Management Framework (RMF).

20          My certifications with the International Information System

21 Security Certification Consortium ((ISC)²) encompasses the full



**ERIC DETERS v MATTHEW HAMMER & McKENZIE & SNYDER**
Expert Report of John Henry Horst, CISSP®-ISSAP®
Xanesti Technology Services, LLC

22  spectrum of professional cyber security, including digital

23  forensics. The examination of email records is a frequent

24  example of such digital forensics and is covered under the

25  larger rubric of Incident Response.

26      I have a National Security Clearance at the TOP SECRET

27  level.

28                          **ENGAGEMENT**

29      I have been engaged to review the complaint of Eric Deters

30  against Matthew Hammer and McKenzie and Snyder, relevant

31  Exhibits associated with the complaint, and to offer an opinion

32  on the allegation made in paragraph 14 of the complaint, which

33  alleges the Defendant falsely stated he did not sign an

34  affidavit filed with the court.

35      I have been asked to review the email records in the

36  custody of the Plaintiff and its information technology service

37  provider. My review of these records entailed the following:

38  1. Reviewing printed copies of the complaint and pertinent

39      Exhibits provided to me by the Plaintiff along with the

40      complaint.



**ERIC DETERS v MATTHEW HAMMER & McKENZIE & SNYDER**
Expert Report of John Henry Horst, CISSP®-ISSAP®
Xanesti Technology Services, LLC

41    2. Making contact mediated by the Plaintiff with the

42       Plaintiff's internet technology provider, a certain Skynet

43       Innovations.

44    3. Obtaining access to the Defendant's dormant corporate email

45       account with information provided by Skynet Innovations.

46    4. Accessing the Defendant's dormant email account using

47       Microsoft Office Outlook.

48    5. Processing the Defendant's email account using the

49       "Autopsy" digital forensics tool.

50    6. Reviewing in Microsoft Outlook several emails as show below

51       under 'TIMELINE'.

52    7. Reviewing the same emails in their vendor-neutral "RFC 822"

53       text file format in Autopsy.

54    8. Downloading and examining the files attached to each

55       message.

56              **STANDARDS FOR REVIEWING AND AUTHENTICATING EMAILS**

57       There are four possible presentations for email evidence,

58    progressing from less to more reliable. The "original

59    specimen" of a corporate email such as is applicable to this

60    matter is the original email saved on an instance of

XANESTI
*Right the first time*

**ERIC DETERS v MATTHEW HAMMER & McKENZIE & SNYDER**
Expert Report of John Henry Horst, CISSP®-ISSAP®
Xanesti Technology Services, LLC

61  Microsoft's Exchange Server. A reliable presentation is one
62  which can be authenticated against this original specimen.

63  Of the four possible presentations, the first, a printed
64  copy of an email, cannot practically be authenticated without
65  some access to the underlying data on the Exchange server.

66  This underlying data is often called "native" format and
67  follows an Internet standard known as RFC 822. This is often
68  called a "forensic" presentation of the email. However, since
69  this forensic presentation is a text file, if an email is
70  reviewed by itself, even in its forensic format, it is
71  possible for the text file representation to have been
72  altered. Examples of such altering might be date/time stamps,
73  sender, recipients, etc.

74  Having access to the email account on the server itself is
75  the third layer where reliability significantly increases.
76  With access to the entire email account, it is possible to
77  consider each email in the context of other related emails. It
78  is also less likely the emails to be considered as evidence
79  will have been tampered with.

80  The fourth layer is access to the entire email server. This
81  level of access includes various forms of server meta-data and



**ERIC DETERS v MATTHEW HAMMER & McKENZIE & SNYDER**
Expert Report of John Henry Horst, CISSP®-ISSAP®
Xanesti Technology Services, LLC

82   is suitable for criminal proceedings where the standard of
83   proof is higher than the civil proceeding at hand.

84      In this matter I am relying on the third level of
85   presentation. I have been granted access to the Defendant's
86   entire corporate email account and my opinion is based on a
87   review of relevant parts of this email account.

88                    **TENTATIVE ANALYSIS**

89      Over the course of my analysis, which will be presented as
90   a timeline below, I have discovered what appears to an
91   instance of a deleted message from the Defendant's email
92   account Inbox. My analysis below will present my reasons for
93   believing this to be a reasonable possibility. Not having any
94   direct evidence before me *at this time* of such behavior, my
95   conclusions and opinion are necessarily tentative and I may
96   revise this report upon receipt of further evidence, discovery
97   production, testimony at deposition, and/or any other
98   information material to my analysis.

99                       **TIMELINE**

100     The following timeline emerges from the relevant email
101   evidence reviewed:

 XANESTI
*Right the first time*

**ERIC DETERS v MATTHEW HAMMER & McKENZIE & SNYDER**
Expert Report of John Henry Horst, CISSP®-ISSAP®
Xanesti Technology Services, LLC

102    **On February 13th, at 10:43am Eastern Standard Time (EST)** an

103    email from Ms. Sarah Jones (sjones@ericdeters.com) was

104    received by the Defendant. The subject line says: 'Proof, Sign

105    and Scan to Me'. There is no text in the body of the email.

106    Attached to this email is a Portable Document Format (PDF)

107    file titled 'THIRD AFFIDAVIT OF MATTHEW J. HAMMER ON THE

108    DISQUALIFICATION OF CHIEF JUSTICE O'CONNOR.pdf'. Page 8 of

109    this PDF is a signature page with blocks for the Defendant and

110    a Notary Public. Neither block has a signature affixed.

111    **On February 13th, at 11:27am EST,** an email sent by Ms.

112    Jones was received in the Inbox of the Defendant and is

113    addressed additionally to a Mr. James Maus

114    (attyjamesmaus@aol.com) and a Mr. Jim Maus

115    (jmaus@ericdeters.com). I surmise that these are the personal

116    and corporate email addresses, respectively, of the same

117    person. This email has the subject 'Third Affidavit'. There is

118    no text in the body of the email. Attached is a Microsoft Word

119    file titled 'THIRD AFFIDAVIT OF MATTHEW J. HAMMER ON THE

120    DISQUALIFICATION OF CHIEF JUSTICE O'CONNOR.docx'. Page 8 of

121    this document is a signature page with blocks for the

122    Defendant and a Notary Public. No signatures are affixed to



**ERIC DETERS v MATTHEW HAMMER & McKENZIE & SNYDER**
Expert Report of John Henry Horst, CISSP®-ISSAP®
Xanesti Technology Services, LLC

123 either. This appears to be a Microsoft Word version of the

124 previously noted PDF version of the same affidavit.

125 **On February 13, 2018 at 2:19pm EST**, from the Defendant's

126 Sent Items folder, an email was sent to Ms. Jones only. It

127 appears to have been forwarded from an account having the

128 email address mevans@ericdeters.com with the subject line

129 being 'SCAN FROM COPIER'. This email contains the affidavit as

130 an attachment with a signature affixed to the block for the

131 Defendant. I have also reviewed this email as received by Ms.

132 Jones.

133 **On February 13, 2018 at 2:22pm EST** an email appears in the

134 Defendant's Sent Items folder being sent to a Mr. James Maus

135 (attyjamesmaus@aol.com). This email appears identical to the

136 above email sent to Ms. Jones in that it contains the same

137 Portable Document File attachment with a signature affixed in

138 the block for the Defendant.

139 In these two aforementioned emails, the PDF document

140 filename is 'doc15862620180213141634.pdf'. I extracted each

141 attachment, and added the 24-hour clock time to each filename,

142 to wit:

143 doc15862620180213141634_1419.pdf



**ERIC DETERS v MATTHEW HAMMER & McKENZIE & SNYDER**
Expert Report of John Henry Horst, CISSP®-ISSAP®
Xanesti Technology Services, LLC

144    doc15862620180213141634_1422.pdf

145    I then used a tool known as Windows Linux Subsystem on a

146    computer running Windows 10 to execute a function named MD5SUM

147    against each file. An MD5 sum is a calculation of what is

148    known as a 'fingerprint' of a digital file. This algorithm is

149    the industry standard for identifying and comparing computer

150    files. The MD5SUM function against each returned the following

151    values, respectively:

152    For 'doc15862620180213141634_1419.pdf':

153    46b2fdb936ef068818da98979b5f8b31

154    For 'doc15862620180213141634_1422.pdf':

155    46b2fdb936ef068818da98979b5f8b31

156    As can be seen here, the MD5SUM output for each attachment

157    is identical; the files are the same.

158    It is clear, then, that at 2:19pm and 2:22pm, the Defendant

159    sent two emails, respectively, with the same PDF file

160    attached. On page 9 of this file, a signature appears in the

161    block for the Defendant. The block for a Notary Public remains

162    blank.


XANESTI
*Right the first time*

**ERIC DETERS v MATTHEW HAMMER & McKENZIE & SNYDER**
Expert Report of John Henry Horst, CISSP®-ISSAP®
Xanesti Technology Services, LLC

163    Of potential evidentiary interest is that the signature

164    purporting to be that of the Defendant appears in a blue/green

165    color. While I am not an expert in handwriting, and do not

166    express an opinion here as to the authenticity of this

167    signature, I will note shortly another email with an

168    attachment appearing to be the same affidavit. Comparing this

169    instance, which has clearly been sent to the Defendant's email

170    account from a copy machine, may suggest this to be a

171    facsimile of the original "wet signature" version of this

172    document.

173    **On February 13, 2018 at 2:25pm** an email was received by Ms.

174    Jones from what appears to be the Defendant's personal email

175    address (hammermj88@gmail.com). This email contains a cover

176    letter apparently signed by the Defendant such as would

177    accompany the affidavit when filing.

178    **On February 13, 2018 at 2:49pm,** an email from Ms. Jones is

179    received by the Defendant as a "CC" recipient. This email

180    contains an attachment with the filename 'Third Affidavit of

181    Disqualification of Chief Justice O'Connor_Signed.pdf'. For

182    comparison purposes, I saved this file as 'Third Affidavit of

183    Disqualification of Chief Justice O'Connor_Signed_1449.pdf' I

XANESTI
*Right the first time*

**ERIC DETERS v MATTHEW HAMMER & McKENZIE & SNYDER**
Expert Report of John Henry Horst, CISSP®-ISSAP®
Xanesti Technology Services, LLC

184    have also reviewed this email from Ms. Jones' Sent Items
185    folder.

186    **On February 13, 2018 at 2:51pm,** similarly, the Defendant
187    received an email as a "CC" recipient. This email contains an
188    attachment with the filename 'Third Affidavit of
189    Disqualification of Chief Justice O'Connor_Signed.pdf'. For
190    comparison purposes, I saved this file as 'Third Affidavit of
191    Disqualification of Chief Justice O'Connor_Signed_1451.pdf'

192    **On February 15, 2018 at 3:34pm,** the Defendant forwarded an
193    email received by him at his corporate email from Ms. Jones to
194    an email account at mhammerj88@gmail.com.

195    Based on the underlying email, it appears this is the
196    abovementioned email from Ms. Jones received by the Defendant
197    on February 13, 2019 at 2:49pm.

198    Attached to this email is a file named 'Third Affidavit of
199    Disqualification of Chief Justice O'Connor.pdf'. For
200    comparison purposes, I saved this attachment as 'Third
201    Affidavit of Disqualification of Chief Justice
202    O'Connor_Signed_Forwarded_20180215_1534.pdf'

ATTORNEY/CLIENT PRIVILEGED
See Title Page for Notice



**ERIC DETERS v MATTHEW HAMMER & McKENZIE & SNYDER**
Expert Report of John Henry Horst, CISSP®-ISSAP®
Xanesti Technology Services, LLC

203    I executed the same MD5SUM analysis as described above on
204    all three files, receiving the following output:

205    For 'Third Affidavit of Disqualification of Chief Justice
206    O'Connor_Signed_1449.pdf':48c373761bdb145397d628d537389029

207    For 'Third Affidavit of Disqualification of Chief Justice
208    O'Connor_Signed_1451.pdf':48c373761bdb145397d628d537389029

209    For 'Third Affidavit of Disqualification of Chief Justice
210    O'Connor_Signed_Forwarded_20180215_1534.pdf':48c373761bdb14539
211    7d628d537389029.

212    Based on the MD5 sum for each, all three attachments are
213    provably the same file.

214                    **APPARENTLY MISSING DATA**

215    From the Defendant's "Sent Items" folder there appears to
216    be two emails of notice: The first is dated February 13, 2018
217    at 2:19pm. The second is dated February 13, 2018 at 2:22pm. As
218    noted above, both emails contain an identical attachment and
219    are sent to Ms. Jones and Mr. Maus, respectively. Both emails
220    also appear to be forwarding information originated from a
221    photocopier configured to use an account addressed at

 **XANESTI**
*Right the first time*

**ERIC DETERS v MATTHEW HAMMER & McKENZIE & SNYDER**
Expert Report of John Henry Horst, CISSP®-ISSAP®
Xanesti Technology Services, LLC

222     mevans@ericdeters.com. The date/time stamp, subject, and "TO:"
223     address (mhammer@ericdeters.com) on both emails are identical.

224        This shows a photocopier was configured to use an account
225     addressed at mevans@ericdeters.com. This further shows some
226     person used this machine to copy a document and have the copy
227     sent to the account addressed at mhammer@ericdeters.com. It is
228     then to be expected that an examination of the account
229     addressed at mhammer@ericdeters.com (that belonging to the
230     Defendant), access to which I have been granted, would show
231     evidence of such a document being received from the printer.

232        I have examined the complete email account of the
233     Defendant, and do not find the expected email received from
234     the printer in the Defendant's Inbox. It is my opinion that,
235     at some point and by some person, this email was deleted.

236                **TENTATIVE OPINION**

237        Notwithstanding the apparently missing data noted above, it
238     is my professional opinion that the Defendant's signature was
239     affixed to either a printed or electronic copy of the
240     affidavit titled 'THIRD AFFIDAVIT OF MATTHEW J. HAMMER ON THE
241     DISQUALIFICATION OF CHIEF JUSTICE MAUREEN O'CONNOR IN THE DR.
242     DURRANI CASES' prior to filing with the court.



**ERIC DETERS v MATTHEW HAMMER & McKENZIE & SNYDER**
Expert Report of John Henry Horst, CISSP®-ISSAP®
Xanesti Technology Services, LLC

243    Based on the email records presented to me, this person

244    must have possessed the credentials necessary to log in to the

245    email account of the Defendant. It is therefore more likely

246    than not that the Defendant himself affixed his signature to

247    the aforementioned court filing before filing it with the

248    court.

249    As such, with respect to the present complaint at paragraph

250    14, it is my opinion that the Defendant has falsely claimed

251    that his signature was forged on the aforementioned filing.

252    **LIMITS TO MY OPINION**

253    I am not an expert in handwriting, and I do not offer an

254    opinion on the genuineness of the signature that appears on

255    the document emailed by the photocopier to the Defendant's

256    email account.

257    Whether the Defendant knew his statement was false is a

258    factual question beyond the scope of my opinion.

259    I offer my opinion strictly on the email evidence presented

260    to me - even in the absence of the aforementioned missing

261    information - which I believe shows it is more likely than not

262    that the Defendant did, in fact, sign the filing referred to



**ERIC DETERS v MATTHEW HAMMER & McKENZIE & SNYDER**
Expert Report of John Henry Horst, CISSP®-ISSAP®
Xanesti Technology Services, LLC

263    in paragraph 14 of the complaint, and that any claim that he

264    did not is factually false.

ATTORNEY/CLIENT PRIVILEGED
See Title Page for Notice

# EXHIBIT 3
# Expert Report of Dr. Roy Fenoff

# FORENSIC DOCUMENT EXAMINATION REPORT

**Report Prepared For:** Eric Deters (DETERS LAW)
**Address:** 5247 Madison Pike, Independence, KY 41051
**Phone No.:** (859) 363-1900
**Case Name:** Deters v. Hammer
**Document Examiner:** Roy Fenoff
**Date of Report:** October 9, 2020

## Document Examination Request

Compare the questioned signature of Matthew J. Hammer on document Q1 to the known signatures of Matthew J. Hammer on documents K1 through K24 to determine common authorship.

## Questioned Matthew J. Hammer Signature Examined

| No. | Date | Description of Document |
|---|---|---|
| Q1 | 02/13/18 | Copy – Third Affidavit of Matthew J. Hammer on the Disqualification of Chief Justice Maureen O'Connor in the Dr. Durrani Cases (signature page 9), signed Matthew J. Hammer. |

## Known Matthew J. Hammer Signatures Examined

| No. | Date | Description of Document |
|---|---|---|
| K1 | 12/15/17 | Copy – Affidavit of Disqualification of Chief Justice Maureen O'Connor and Judge Mark Schweikert (signature page 25), signed Matthew J. Hammer. |
| K2 | 12/26/17 | Copy - Typed letter addressed to "Judge Schweikert" (RE: Case No. 1:17-cv 00846-MRB), signed Matthew J. Hammer. |
| K3 | 12/27/17 | Copy – Second Affidavit of Matthew J. Hammer on the Disqualification of Judge Mark Schweikert (signature page 3), signed Matthew J. Hammer. |
| K4 | 01/03/18 | Copy – Second but New Affidavit of Matthew J. Hammer Disqualification of Chief Justice Maureen O'Connor in the Dr. Durrani Cases (signature page 3), signed Matthew J. Hammer. |
| K5 | 01/10/18 | Copy – Fifth Affidavit of Matthew J. Hammer on the Disqualification of Judge Mark Schweikert (signature page 3 of 5), signed Matthew J. Hammer. |
| K6 | 01/19/18 | Copy – Seventh Affidavit of Matthew J. Hammer on the Disqualification of Judge Mark Schweikert (signature page 4 of 5), signed Matthew J. Hammer. |
| K7 | 01/30/18 | Copy - Typed letter addressed to "Dear David" (RE: Deposition Requests Dr. Mehlman and Deborah Faris), signed Matthew J. Hammer. |

| K8 | 02/05/18 | Copy – Typed letter addressed to "Dear Clerk" (RE: Judge Mark Schweikert Eighth Disqualification Request), signed Matthew J. Hammer. |
| K9 | 09/26/17 | Copy – Typed letter addressed to "Barbara" (RE: Kirstin Weisman File No: OH-15571, 2 pages), signed Matthew J. Hammer. |
| K10 | 02/16/18 | Copy – Eleventh Affidavit of Matthew J. Hammer on the Disqualification of Judge Mark Schweikert (signature page 2 of 3), signed Matthew J. Hammer. |
| K11 | No Date | Copy – Signature page of typed letter, signed Matthew J. Hammer. |
| K12 | 03/05/15 | Copy – Typed letter addressed to "Dear Attorney General" (RE: Journey Lite Compliance With Ohio Administration Code 3701-83-07(A)(5)), signed Matthew J. Hammer. |
| K13 | No Date | Copy – Signature page 10 of typed document, signed Matthew J. Hammer. |
| K14 | No Date | Copy – Signature page 3 of typed document, signed Matthew J. Hammer. |
| K15 | 04/24/15 | Copy – Typed letter addressed to "Dear Mr. Brittingham and Ms. Probst" (RE: Krissy Probst Deposition), signed Matthew J. Hammer. |
| K16 | 04/28/15 | Copy – Typed letter addressed to "Dear Mr. Vander Laan" (RE: Krissy Probst), signed Matthew J. Hammer. |
| K17 | 05/06/15 | Copy – Typed letter addressed to "Dear Counselors" (RE: Julie Martin), signed Matthew J. Hammer. |
| K18 | No Date | Copy – Signature page 2 of typed document, signed Matthew J. Hammer. |
| K19 | No Date | Copy – Signature page 2 of typed document, signed Matthew J. Hammer. |
| K20 | 05/29/15 | Copy – Typed letter addressed to "To Whom It Concerns", signed Matthew J. Hammer. |
| K21 | No Date | Copy – Signature page 2 of typed document, signed Matthew J. Hammer. |
| K22 | 06/22/15 | Copy – Typed letter addressed to "Dear Ms. Bell" (RE: Grievance CBA File No. G2015-094), signed Matthew J. Hammer. |
| K23 | 07/01/15 | Copy – Typed letter addressed to "Dear Ms. Bell" (RE: Grievance CBA File No. G2015-093), signed Matthew J. Hammer. |
| K24 | 07/10/15 | Copy – Typed letter addressed to "Dear Judge Guckenberger (RE: Durrani Cases), signed Matthew J. Hammer. |

**Examination Conducted**

I conducted a laboratory examination of the known signatures (K1 through K24) and the signature in question (Q1). The analysis was conducted using different measuring devices and visual

techniques including transmitted light, digital imaging, and a stereo microscope under various powers of magnification and illumination. The documents were digitally enlarged so that special attention could be given to the individualizing characteristics of the questioned and known signatures. These individual features were compared and contrasted. The methodology used in this analysis is based on the standards developed by professionals in the questioned document field and guidelines published by the Scientific Working Group for Forensic Document Examination (SWGDOC Standard for Examination of Handwritten Items).

**Basis of Findings**

Two of the fundamental principles that underlie handwriting identification are: (1) no two writers share the same combinations of handwriting characteristics, and (2) an individual's normal writing always has some degree of natural variation which prevents the writer from signing his or her name the exact same way twice. Consequently, the task of the forensic document examiner is to determine if the differences in an individual's writing are the result of natural variations, which are the normal changes that occur in a person's handwriting, or of a different writer. Before conducting a comparison between the known and the questioned handwriting samples, the writer's range of natural variation must be established. To do this, the forensic document examiner must obtain a sufficient number of known handwriting samples that are contemporaneous to the writing in question. Although the number of these samples can vary, the standard amount typically used by professionals in the forensic document examination field is ten to twenty known signatures. Experts, including Ordway Hilton (1982)[1], one of the leading authorities of questioned document examination in North America, have determined that at least ten signatures are necessary to obtain an accurate assessment of a writer's range of variation, which is a crucial part of the handwriting identification process. If the principles and appropriate methodology for handwriting identification are followed, and it is determined that the handwriting features in the questioned writing are consistent with the ones in the known writing, it can be concluded that both writings were authored by the same person. However, if there is at least one significant unexplainable difference, it can be inferred that the authors of the questioned and the known writings are different[2]. In this case, I was provided a total of 24 known Matthew J. Hammer signatures, which were compared among each other to assess the writer's range of natural variation. After determining the writer's range of natural variation, the writing features of the questioned signature (Q1) was examined and compared to the known signature samples (K1 through K24). The results of my examination are summarized below.

**Summary of Findings**

The results of the examination show that the questioned signature of Matthew J. Hammer is consistent with the signatures known to have been authored by Matthew J. Hammer as provided for my examination. Therefore, it can be concluded that the differences found between the questioned and known signatures of Matthew J. Hammer are insignificant and can be attributed to the natural variation of the writer.

---

[1] Hilton, O. (1982). Scientific Examination of Questioned Documents. New York, NY: Elsevier.
[2] Osborn, A. S. (1929). Questioned Documents. Albany, NY: Boyd Printing CO.

Conclusion

The SWGDOC Standard Terminology for Expressing Conclusions of Forensic Document Examiners has been used in the preparation of the opinions in this report. The SWGDOC provides the following nine-level scale for expressing conclusions:

- Identification
- Strong probability
- Probable
- Indications
- No conclusion
- Indications did not
- Probably did not
- Strong probability did not
- Elimination

Based upon the aforementioned examination results, there is evidence to support the following opinion:

The author of the Matthew J. Hammer signatures on the documents referred to as K1 through K24 is the author of the Matthew J. Hammer signature on the document referred to as Q1.

The opinion stated above is based upon the examination of xerographic copies of the questioned and known documents. If original documents are made available for examination, this report may be modified.

Attachments

Attached you will find a copy of the documents I examined and a copy of my curriculum vitae which evidences my training and experience in the handwriting and questioned document examination field. Should you require that I testify to any of this material, or need additional information regarding my findings, please contact me at your earliest convenience.

Respectfully submitted,

Roy Fenoff, PhD
Assistant Professor of Criminal Justice, The Citadel
Forensic Handwriting and Document Examiner

3. The Chief Justice submit to all parties a list of judges which the parties could AGREE on a judge. No party objected to Judge Sargus.

Further Affiant sayeth naught.



Matthew J. Hammer

Subscribed and sworn before me by Matthew J. Hammer this _____ day of _____, 2018.

_____
Notary Public

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was hand delivered to the Court and served electronically this 13th day of February 2018 upon the following:

| | |
|---|---|
| Chief Justice Maureen O'Connor<br>Supreme Court of Ohio<br>c/o Diane Hayes<br>Judicial Assignment Specialist<br>Office of Judicial Services<br>65 South Front Street, 6th Floor<br>Columbus, OH 43215 | Bill J. Paliobeis, Esq.<br>Walter E. Haggerty, Esq.<br>FROST, BROWN, TODD<br>3300 Great American Tower<br>301 East Fourth Street<br>Cincinnati, OH 45202<br>*Counsel for Defendants,*<br>*West Chester Medical Center, Inc., and UC* |
| Honorable Judge Mark R. Schweikert<br>Hamilton County Court of Common Pleas<br>Hamilton County Courthouse<br>100 Main Street, Room 310<br>Cincinnati, Ohio 45202 | *Health*<br><br>Marilena R. Walters, Esq.<br>Mary-Jo Pullen<br>Dinsmore & Shohl<br>191 W. Nationwide Blvd., Ste. 300 |
| Michael F. Lyon, Esq.<br>Lindhorst & Dreidame<br>312 Walnut Street, Suite 3100<br>Cincinnati, OH | Columbus, Ohio 43215<br><br>Jennifer Orr Mitchell (0069594)<br>Jessica L. Schoenfeld (0090428) |

9



The Chief Justice has broad powers to control dockets in Ohio. While she may possess that legal power, it does not mean that in the Dr. Durrani cases that power has been used fair and impartial to the Dr. Durrani victims. It has not.

Affiant does thank the Court for not releasing further rulings until this was filed and can be ruled upon. Affiant informs the Court that if there is not recusal, a federal action will be filed in days and further rulings should be paused until that action is heard too.

Before a final ruling is made by a federal Court, affiant on behalf of Dr. Durrani victims will seek discovery of the communications referenced in this affidavit.

Further Affiant sayeth naught.

*Matthew J. Hammer*

Matthew J. Hammer

Subscribed and sworn before me by Matthew J. Hammer this 15th day of December, 2017.

*Loretta Little*

Notary Public

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was hand delivered to the Court and served electronically this 15th day of December 2017 upon the following:

| | |
|---|---|
| Chief Justice Maureen O'Connor<br>Supreme Court of Ohio<br>c/o Diane Hayes<br>Judicial Assignment Specialist<br>Office of Judicial Services<br>65 South Front Street, 6th Floor<br>Columbus, OH 43215<br><br>Honorable Judge Mark R. Schweikert<br>Hamilton County Court of Common Pleas | Bill J. Paliobeis, Esq.<br>Walter E. Haggerty, Esq.<br>FROST, BROWN, TODD<br>3300 Great American Tower<br>301 East Fourth Street<br>Cincinnati, OH 45202<br>*Counsel for Defendants,*<br>*West Chester Medical Center, Inc., and UC*<br>*Health* |

25

K1



**DETERS LAW ⚖ OFFICE**

Main Office
5247 Madison Pike
Independence, KY 41051
859.363.1900
Fax: 859.363.1444

Cincinnati
44th Floor Carew Tower
441 Vine Street
Cincinnati, OH 45205
513.729.1999

*Reply To:*

December 26, 2017

Honorable Judge Mark R.
Schweikert
Hamilton County Court
Of Common Pleas
Hamilton County Courthouse
1000 Main Street, Room 310
Cincinnati, Ohio 45202

    **RE:   Case No. 1:17-cv-00846-MRB**

Dear Judge Schweikert:

    Since no legal counsel has filed anything on your behalf, we send this to you. To reinforce and expand our last request, please preserve emails, letters, texts and other communications between you and the following, which involve the Dr. Durrani cases:

1. Chief Justice Maureen O'Connor
2. Any staff of the Supreme Court
3. All lawyers from Defendant law firms, whether or not they are actual lawyers representing the Defendants. This would be their ex parte communication to you and/or Scott Engel and/or anyone assisting you, not communication we were copied on.
4. Defendants in the Dr. Durrani litigation and their representatives
5. Scott Engel
6. Judge Guy Guckenberger
7. Judge Melba Marsh
8. Any other Hamilton County Common Pleas Judge

        Sincerely,

Matthew J. Hammer

K2

_Matthew J. Hammer_

Matthew J. Hammer

Subscribed and sworn before me by Matthew J. Hammer this ___ day of _Dec._ ,
2017.

_Maria Dallas_

Notary Public

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was hand delivered to the
Court and served electronically this _22nd_ day of _December_ 2017 upon the following:

| | |
|---|---|
| Chief Justice Maureen O'Connor<br>Supreme Court of Ohio<br>c/o Diane Hayes<br>Judicial Assignment Specialist<br>Office of Judicial Services<br>65 South Front Street, 6th Floor<br>Columbus, OH 43215 | Bill J. Paliobeis, Esq.<br>Walter E. Haggerty, Esq.<br>FROST, BROWN, TODD<br>3300 Great American Tower<br>301 East Fourth Street<br>Cincinnati, OH 45202<br>_Counsel for Defendants,_<br>_West Chester Medical Center, Inc., and UC_<br>_Health_ |
| Honorable Judge Mark R. Schweikert<br>Hamilton County Court of Common Pleas<br>Hamilton County Courthouse<br>100 Main Street, Room 310<br>Cincinnati, Ohio 45202 | Marliena R. Walters, Esq.<br>Mary-Jo Pullen<br>Dinsmore & Shohl<br>191 W. Nationwide Blvd., Ste. 300<br>Columbus, Ohio 43215 |
| Michael F. Lyon, Esq.<br>Lindhorst & Dreidame<br>312 Walnut Street, Suite 3100<br>Cincinnati, OH<br>mlyon@lindhorstlaw.com<br>_Counsel for Abubakar A. Durrant, M.D.,_<br>_&Center for Advanced Spine_<br>_Technologies(CAST)_ | Jennifer Orr Mitchell (0069594)<br>Jessica L. Schoenfeld (0090428)<br>Jenna Moran (0092663)<br>Dinsmore & Shohl, LLP<br>1900 Chemed Center<br>255 East Fifth Street<br>Cincinnati, Ohio 45202<br>Jennifer.mitchell@dinsmore.com<br>Jessica.schoenfeld@dinsmore.com |
| Karen A. Carroll, Esq. (0070483)<br>Jeffrey M. Hines, Esq. (0039350) | |

3

K3

Exhibit 5 is a report reflecting 2014 information regarding how healthcare money affected the vote by the Supreme Court on the statute of repose. The same money flowed to the legislators involved.

## CONCLUSION

It defies all common sense and no rational American, judge or person would ever review these Affidavits and conclude... "Yeah, Chief Justice O'Connor can be fair to Plaintiffs." For anyone to conclude otherwise is insincere.

If anyone should want to remove any issue of bias and prejudice of a legal proceeding it is the Chief Justice of the Ohio Supreme Court. She should.

Further Affiant sayeth naught.

_____
Matthew J. Hammer

Subscribed and sworn before me by Matthew J. Hammer this ___3rd___ day of
___January___, 2018.

_____
Notary Public

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was hand delivered to the Court and served electronically this __4th__ day of __January__ 2018 upon the following:

3

K4

7. The Verified Complaint was filed and sent to Judge Schweikert by email and hand delivered on December 18, 2017. Nine (9) days went by before December 27, 2017 when there was a telephone conference with the federal judge and Jim Harper argued for Judge Schweikert.

8. It gets worse for Judge Schweikert. Exhibit 1 are the Dr. Durrani cases Joe Deters entered an appearance in. Therefore, Judge Schweikert received legal representation from Joe Deters' office while Joe Deters was prior legal counsel for all those in Exhibit 1. It's outrageous. It's unethical. It's NO fault of Deters law. It's NO fault of Plaintiffs. It's the fault of Judge Mark Schweikert. As soon as he knew he needed legal counsel, he knew Joe Deters' office could not provide that representation based upon his past involvement in the cases.

9. Deters Law believes Judge Schweikert has had contact with the Chief Justice regarding at least the first Affidavit of Disqualification. Since she would be potentially ruling on it, this too is highly improper. Deters Law demands Judge Schweikert deny it or admit it. It's inconceivable with his admission he took orders from her that we didn't ask what his orders were on the Affidavit of Disqualification.

10. Judge Schweikert continues like a broken record, simply stating over and over that he's not biased and prejudiced, as if all the facts are supposed to be ignored and he should be "trusted." In addition, Plaintiffs have a legitimate concern that in the face of all the issues, Judge Schweikert still refuses to self-recuse. It is beyond obvious he does not because he wants to carry out the charge of the Chief Justice to decimate the legitimate Dr. Durrani cases and he does so knowing she supports him in this cause, because she is the architect of his appointment for that purpose.

11. At social engagements, Judge Schweikert is calling the Dr. Durrani cases a "pain in his ass." Plaintiffs do not want a judge who believes their cases are a "pain in his ass." He stated this to Dan Miller of Robert Jones Brothers Plumbing at a party. Dan Miller reported Judge Schweikert's statement. Dan Miller has NO connection to Deters Law or the cases.

12. Judge Schweikert also submitted all the transcripts of the hearings. Those transcripts have no relevance to all the issues raised in the Affidavits of Disqualification EXCEPT the reference to the Chief Justice's Orders. Judge Schweikert is attempting to project he held a bunch of hearings, let everyone talk, so he's not biased or prejudiced. It's a farce.

Further Affiant sayeth naught.

Matthew J. Hammer

3

K5

16. He also claims he "refrains from discussing cases or pending business matters outside of proper venues" (Exhibit 16). Really? He told a man at a social event the Dr. Durrani cases were a "pain in his ass." See Affidavit #6.

17. He also claims as in Exhibit 17:

"A judge cannot know all the law must be willing to investigate and seek knowledge. I have often found that I cannot rely on just my knowledge or even the legal arguments of counsel. I always confirm the critical legal points in every decision. I am patient and careful in the pursuit of fact finding and legal conclusions."

This from someone who did not look at the legislative history of the savings statute and the statute of repose.

18. He decided a significant legal point based on legislative history without reviewing that legislative history, which supported Plaintiffs.

19. Judge Schwelkert and the Chief Justice need to recuse.

Further Affiant sayeth naught.

Matthew J. Hammer

Subscribed and sworn before me by Matthew J. Hammer this 19th day of January, 2018.

Loretta Little
Notary Public

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was hand delivered to the Court and served electronically this 19th day of January 2018 upon the following:

4

K6



**DETERS LAW OFFICE**

| Main Office | Cincinnati |
| --- | --- |
| 5247 Madison Pike | 44th Floor Carew Tower |
| Independence, KY 41051 | 441 Vine Street |
| 859.363.1900 | Cincinnati, OH 45205 |
| Fax: 859.363.1444 | 513.729.1999 |

*Reply To:*

January 30, 2018

J. David Brittingham
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
F: 513-977-8141
davidbrittingham@dinsmore.com

RE:    Deposition Requests
       Dr. Mehlman and Deborah Faris

Dear David:

There should be no confusion. We have a negligent credentialing and retention claim in all cases. The depositions will be on that issue for all cases. They have been on our witness list for years. It is a very appropriate request. We get tired of you doing this over and over. You inform us you will produce them, or we will produce them. We are only going to ask them questions relative to the negligent credentialing and retention claims, not care of any specific case. Your obstruction is not going to work on these two witnesses. We are entitled to depose them and we will.

You can't grasp that?

Sincerely,

Matthew J. Hammer

Copy:  All Defense Counsel
       Al Stalman
       Fred Johnson
       Jim Maus
       Ben Maraan
       Eric Deters

K7



**DETERS
LAW ⚖️
OFFICE**

Main Office
5247 Madison Pike
Independence, KY 41051
859.363.1900
Fax: 859.363.1444

Cincinnati
44th Floor Carew Tower
441 Vine Street
Cincinnati, OH 45205
513.729.1999

*Reply To:*

February 5, 2018

Office of the Clerk
Sandra H. Grosko, Esq.
Supreme Court of Ohio
65 South Front Street, 8th Floor
Columbus, Ohio 43215-3431
Fax: 614.387.9539

**Re:   Judge Mark Schweikert Eighth Disqualification Request**

Dear Clerk:

This letter and the attached affidavit is being sent pursuant to ORC § 2701.03 in the above referenced matter. Please proceed accordingly. If there are any issues, please contact me at 513-729-1999 or mhammer@ericdeters.com. Please return a filed stamped copy in the self-addressed stamped envelope.

Sincerely,

Matthew J. Hammer

Copy:
Chief Justice Maureen O'Connor
Judge Mark Schweikert
All Defense Counsel
Charles H. Deters

K8

T3-T2. During this surgery Infuse/BMP-2 was implanted in her without her (or her legal guardian's) knowledge or consent. The simple fact that Infuse/BMP-2 was used is the basis for this settlement. I do not have any information that shows that Infuse/BMP-2 was implanted in her during the 12/20/2009 surgery at West Chester Hospital. That does not mean it did not happen, but she is not being compensated for this surgery with regard to the Medtronic Settlement.

Again, we are asking for a lien waiver for such a small amount when her main case is still is pending. This is merely an ancillary settlement. If you assert the lien, she will be left with nothing and so will we. Based on all of the above, I'm respectfully asking you to send me a letter indicating that any and all liens are being waived for purposes of this settlement.

Thank you,

Matthew J. Hammer, Esq.

K9

Conduct Rule 2.11 and other sections, the conduct undermines the independence, integrity and impartiality of Judge Mark Schweikert.

The following points must be made by Affiant and states the following for disqualification:

1. Affiant attaches his request for records under Ohio Open Records law. **Exhibit 1.** Based on what these show, affiant alerts the Court to a future affidavit. This should be factored into disqualification.

2. Affiant attaches a transcript of how Mike Lyon treated him in open court and how Judge Schweikert did nothing. **Exhibit 2.** It's really astonishing and reflects the bias and prejudice of Judge Schweikert.

3. Affiant attaches the latest in Mike Lyon's ruse with the deposition of Dr. Durrani. Judge Schweikert allowed this to happen. **Exhibit 3.** Further reflection of bias and prejudice.

Further Affiant sayeth naught.

Matthew J. Hammer

Subscribed and sworn before me by Matthew J. Hammer this _16th_ day of _Feb,_ , 2018.

Notary Public

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was hand delivered to the Court and served electronically this 16th day of February 2018 upon the following:

| | |
|---|---|
| Chief Justice Maureen O'Connor<br>Supreme Court of Ohio<br>c/o Diane Hayes<br>Judicial Assignment Specialist | Bill J. Paliobeis, Esq.<br>Walter E. Haggerty, Esq.<br>FROST, BROWN, TODD<br>3300 Great American Tower |

2

K10

Bloomfield review more cases they may be asked about all the cases they reviewed in the case being tried.

We have highlighted our witness list for your benefit; Witnesses highlighted are certain to probable to be called. As you know, there has not yet been a trial of a case involving hospital witnesses. As they unfold, the witness picture will be clearer, but we are not going to not disclose potential witnesses.

For reference, we created a table of contents to all the attached.

Finally, we are copying Scott Engel so the Court knows we have done this now and over the years in comprehensive fashion.

Sincerely,

Matthew J. Hammer

K11



**DETERS**
**LAW**
**OFFICE**

Main Office
5247 Madison Pike
Independence, KY 41051
859.363.1900 • Fax: 859.363.1444

Cincinnati
19 Broadcast Plaza
635 West 7th Street, Suite 401
Cincinnati, OH 45203
513.729.1999 • Fax: 513.381.4084

***Reply To:***

    JL attached in the February 4, 2015 letter what has been called a "visit charge detail" and suggests that this satisfies their duty under OAC 3701-83-07(A)(5). As you will see the itemized bill provided by Plaintiff's is appropriate and drastically different then the provided by JL.

    Please do not hesitate to Contact me or my office should you have any questions.

Sincerely,

Matthew Hammer, Esq.

K12

### Our Experts

We will not only be calling Dr. Wilkey, but Bruce Podrat, on the issue of Journey Lite and others liability. We also will be calling an economic expert.

### Judge Ruehlman

We operate under a simple premise. If it is something you like, it must be bad for us. If you don't like it, it must be good for us. Since you opposed, quite nasty by the way, the consolidation of the cases to Judge Ruehlman, it must be good for us. He told all counsel he was going to order mediation. Now that your baseless appeal has been dismissed, we assume he will keep his word and order mediation. We will also be asking if mediation fails, one trial for all our Journey Lite cases.

### Monday's Mediation and Tentative Deal

Under the terms of our tentative agreement, we can't accept the $900,000 based upon our disagreement on coverage. You know you have tried to bamboozle us. You need to bring all the coverage to the table with sworn verification and we will talk some more if you like. If you fail to produce what we demand here and discontinue negotiations, we do all which we threaten here. We will never make a deal in the "dark." We will never make a bad deal. We expect everything we requested.

Sincerely,

Matthew J. Hammer

/sy

Copy: Charles H. Deters
Stephanie Collins
Erica Deters
Eric Deters
Steve Stephens

10



August 31, 2015 mediation. We expect all of them to be there, including those involved in the Directors and Officers coverage. The Order does not state only the insurance representatives you choose.

We must insist on all Directors and Officers liability policies from 2008 (Dr. Durrani began his process of joining West Chester), 2009, 2010, 2011 and 2012. We remind you we have requested all of this in the formal discovery.

Our expert believes, as we do, the Healthcare Professional, General Liability and Directors and Officers policies for every year 2009 through 2013 applies to these claims.

Sincerely,

Matthew J. Hammer

/sy

Copy: Charles Deters
      Erica Deters
      Stephanie Collins
      Eric Deters
      Paul Burkett

3

K14



# DETERS
# LAW ⚖
# OFFICE

Main Office
5247 Madison Pike
Independence, KY 41051
859.363.1900 • Fax: 859.363.1444

Cincinnati
19 Broadcast Plaza
635 West 7th Street, Suite 401
Cincinnati, OH 45203
513.729.1999 • Fax: 513.381.4084

*Reply To:*

April 24, 2015

Krissy Probst
8737 Stitts Hill Rd.
Moores Hill, IN 47032

J. David Brittingham, Esq.
Dinsmore & Shohl LLP, Suite 1900
255 East Fifth Street
Cincinnati, OH 45202
David.brittingham@dinsmore.com

RE: Krissy Probst Deposition

Dear Mr. Brittingham and Ms. Probst:

It is our position it was a conflict of interest for Mr. Brittingham to represent Children's Hospital and Ms. Probst based upon all the facts and circumstances of this matter.

There is now another conflict going forward.

It is our position Ms. Probst committed perjury at her deposition and Mr. Brittingham suborning perjury. We plan on pursuing both.

In light of the seriousness of this matter, it is an obvious conflict of interest.

We are putting both of you on notice. In addition, preserve all texts, emails and correspondence between the two of you and all documentation memorializing your communication. Also, any communication between you and third parties including co-workers on the subject matter. We are confident law enforcement and the prosecution will want this information.

Sincerely,

Matthew J. Hammer

/sy

K15



**DETERS LAW OFFICE**

| Main Office | Cincinnati |
| --- | --- |
| 5247 Madison Pike | 19 Broadcast Plaza |
| Independence, KY 41051 | 635 West 7th Street, Suite 401 |
| 859.363.1900 • Fax: 859.363.1444 | Cincinnati, OH 45203 |
| | 513.729.1999 • Fax: 513.381.4084 |

*Reply To:*

April 28, 2015

Mark A. Vander Laan
Dinsmore & Shohl
255 East Fifth Street
Suite 1900
Cincinnati, OH 45202
Mark.vanerlaan@dinsmore.com

     RE: Krissy Probst

Dear Mr. Vander Laan:

    We will continue as outlined and stand by our position.

    Since you do not have ignorance as an excuse and since you are not "new to the bar" (I don't appreciate the condescension), what is your excuse for not grasping the following?

    First, David Brittingham claimed, not Ms. Probst by the way, he only represented her for purposes of the deposition. I assume you didn't read it. The issue of perjury is a wholly different issue. My letter did not violate the rule you claim.

    Second, the accusation has not violated any rule. Do you expect us to ignore perjury and the suborning of it? We will not. It has nothing to do with RPC. 2.1(e).

    I assure you we are pursuing this will all due speed and vigor.

    Be advised, we stand by our request for preservation of everything and the obvious conflict in defending Ms. Probst for perjury.

    Finally, we provide documentation to support our allegation against Mr. Brittingham and Ms. Probst. We are saving the best for the prosecutor. The defense attorneys can get it from them. Ms. Probst, we are mailing you a copy of our documentation and the audio of your statement to us.

             Sincerely,

             Matthew J. Hammer

K16


LAW
OFFICE

| Main Office | Cincinnati |
| --- | --- |
| 5247 Madison Pike | 19 Broadcast Plaza |
| Independence, KY 41051 | 635 West 7th Street, Suite 401 |
| 859.363.1900 ◦ Fax: 859.363.1444 | Cincinnati, OH 45203 |
| | 513.729.1999 ◦ Fax: 513.381.4084 |

*Reply To:*

May 6, 2015

Karen A. Carroll, Esq.
Jeff Hines, Esq.
Rendigs Fry Kiely & Dennis, LLP
600 Vine Street, Suite 2650
Cincinnati, OH 45202

     RE:   Julie Martin

Dear Counselors:

    We are hand delivering today to defense counsel in Julie Martin's case the 152 sets of medical records and radiology reviewed by Dr. Wilkey before he signed the affidavits of merit.

    These are the 152 West Chester cases he reviewed prior to Julie Martin's surgery.

    These were previously sent to you by virtue of prior case disclosures. We have now arranged them for the Julie Martin trial.

    We will follow Evid. R. 703 and by virtue of his prior rulings, Dr. Wilkey will be allowed to testify to these in Stage II.

        Sincerely,

        Matthew J. Hammer

Copy:
Erica Deters
Ben Maraan
Eric Deters

K17

~~against lots of people with lots of insurance and lots of assets.~~

We are just getting started.

Sincerely,

Matthew J. Hammer

/sy

Copy:  Carolyn Taggart
Rick Weil
Russell Morgan
Ana Crawford

2

K18

We are not going to share with you everything we sent to the prosecutor's office so that Mr. Vander Laan obtains it prior to any criminal prosecution.

He can obtain it defending Mr. Brittingham in criminal charges. He won't be able under conflict of interest laws to represent Ms. Probst too.

Please provide this to Mr. Vander Laan.

Sincerely,

Matthew J. Hammer

Copy: Edwin W. Patterson III, Esq.
Paul M. Laufman, Esq.

2

K19



**DETERS**
**LAW**
**OFFICE**

Main Office
5247 Madison Pike
Independence, KY 41051
859.363.1900 • Fax: 859.363.1444

Cincinnati
19 Broadcast Plaza
635 West 7th Street, Suite 401
Cincinnati, OH 45203
513.729.1999 • Fax: 513.381.4084

**Reply To:**

May 29, 2015

To Whom It Concerns:

Today, you were named in over 200 Dr. Durrani claims as a Defendant. You will be served with the Complaint.

We also filed two class actions against West Chester/UC Health, one on behalf of BMP-2 victims and one on behalf of PureGen victims. We will be adding you as a Defendant to those claims too.

The purpose of this letter is three-fold:

1. You are to preserve any and all evidence including emails from any and all personal email accounts pertaining to Dr. Durrani and the issues described in great detail in the lawsuit;

2. Please notify any and all insurance companies from which you have purchased personal insurance which could cover the claims against you detailed in the lawsuit. In addition, any and all directors' and officers' policies for West Chester and UC Health need notification.

3. Since as of now we have no idea who will be representing you in these cases, we are sending this directly to you since we are allowed and we need to notify you of #1 and #2 above.

Be advised, as reflected by the attached, we want to resolve these cases on behalf of 300 victims of Dr. Durrani at West Chester but there has been no sincere effort on West Chester/UC Health's part.

Sincerely,

Matthew J. Hammer

K20

If a hospital and a doctor allow and participate in a scheme where a biologics, which was not in a clinical trial or ever approved for any human use, is placed in humans without their knowledge or consent, is that not something as simple as battery and other state and federal crimes.

Dr. Durrani's victims can use all the help they can get.

Please consider opening a criminal investigation and pursuing a criminal prosecution of Dr. Durrani and/or West Chester.

Sincerely,

Matthew J. Hammer

Copy: Dr. David Ross
Dr. Scott Lederhaus
Dr. Keith Wilkey

2

K21



# DETERS
# LAW ⚖
# OFFICE

Main Office
5247 Madison Pike
Independence, KY 41051
859.363.1900 · Fax: 859.363.1444

Cincinnati
19 Broadcast Plaza
635 West 7th Street, Suite 401
Cincinnati, OH 45203
513.729.1999 · Fax: 513.381.4084

*Reply To:*

June 22, 2015

Susan R. Bell
The Cincinnati Bar Center
225 East Sixth Street
Second Floor
Cincinnati, OH 45202
srb@corsbassett.com

**RE:** **Grievance**
**CBA File No. G2015-94**

Dear Ms. Bell:

As shown by all the attached, Walt Haggerty has made serious misrepresentation to you, as he did to Judge Guckenberger. Please consider this as a complaint against Mr. Haggerty. In fact, I have a libel claim now against Mr. Haggerty.

Walt Haggerty lied to the Court and you that he represented these Defendants.

I stand by my letter to them.

Sincerely,

Matthew J. Hammer

1

K22



DETERS
LAW ⚖
OFFICE

Main Office
5247 Madison Pike
Independence, KY 41051
859.363.1900 • Fax: 859.363.1444

Cincinnati
19 Broadcast Plaza
635 West 7th Street, Suite 401
Cincinnati, OH 45203
513.729.1999 • Fax: 513.381.4084

*Reply To:*

July 1, 2015

Susan R. Bell
The Cincinnati Bar Center
225 East Sixth Street
Second Floor
Cincinnati, OH 45202
srb@corsbassett.com

RE:  Grievance
      CBA File No. G2015-93

Dear Ms. Bell:

I am not in possession of any more relevant documents. However, you may want to interview Eric Deters. He will report that after a deposition at UC Health at the old Jewish Hospital building (Ann Shelly deposition), he had a conversation with David Brittingham where David Brittingham stated whoever sent the calendar committed a crime. Eric informed David Brittingham that he received it anonymously, but Eric believed it was obviously no coincidence he heard from Michelle Walters regarding Krissy Probst and then he received Dr. Durrani's personal calendar. Michelle Walters had no access to the calendar.

It defies any sense of logic and common sense that if you review what we sent, that Krissy Probst went from a willing witness for us as reflected in the transcribed statement and her meeting with the FBI (local agent Houston), to making a 180 degree reversal. Mr. Houston could also verify Ms. Probst's willingness to assist us against Dr. Durrani. Mr. Brittingham's letter documents his criminal charge threat.

You expect us to believe that Krissy Probst miraculously turned after speaking to David Brittingham and he didn't inform her that she violated the law as he outlined in his letter and she could be prosecuted?

Krissy Probst subsequently, as we detailed committed perjury. Why? David Brittingham's threat.

There is no question Probst committed perjury. Why?

Sincerely,

Matthew J. Hammer

1

K23



**DETERS**
**LAW**
**OFFICE**

Main Office
5247 Madison Pike
Independence, KY 41051
859.363.1900 • Fax: 859.363.1444

Cincinnati
19 Broadcast Plaza
635 West 7th Street, Suite 401
Cincinnati, OH 45203
513.729.1999 • Fax: 513.381.4084

*Reply To:*

July 10, 2015

Judge Guckenberger
gcgucken@fuse.net

RE:    Durrani Cases

Dear Judge Guckenberger:

Your Honor, Judge Hogan said something that is troubling to us. He said you were critical of Dr. Wilkey. We believe it is improper that our expert is "poisoned." You also stated to us that you believe Dr. Wilkey's testimony in *Martin* was professional and appropriate. Therefore, we do not understand Judge Hogan's representation.

We wanted Judge Hogan to discuss legal issues with you because it's frustrating that we argue all these issues and then we start over again. He even stated he wanted to go back to "unavailable" for Dr. Durrani when as you know that was no sanction at all in *Marshall*. It is beyond unfair that a fleeing, indicted felon refuses to give a deposition and the only "sanction" is unavailable. We fought hard to get a fair sanction. Then we lose it.

We believe having to reargue these issues with every new judge assigned is highly prejudicial to us.

Sincerely,

Matthew J. Hammer

/sy/
Copy:
Judge Hogan *by mail as requested*
Charlie Deters
Mike Lyon
Laurie McCluskey
Karen Carroll
Jeff Hines
Walt Haggerty
Bill Paliobeis
Eric Deters
Ben Maraan

1

K24