UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ERIC C. DETERS

    Plaintiff,

v.

MATTHEW HAMMER, et al.,

    Defendants.

Case No. 1:20-cv-00362

Black, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Eric Deters, proceeding *pro* se, initiated this action on October 19, 2020 by filing a complaint against Matthew Hammer and Mr. Hammer's current law firm.[1] Plaintiff alleges that Defendant Hammer is liable for defamation and false light under Ohio law, and that Defendant McKenzie & Snyder, LLP is vicariously liable for Hammer's commission of those torts. (Doc. 1). Pursuant to local practice, the case has been referred to the undersigned for initial consideration and a report and recommendation on the Defendants' pending motion for summary judgment. For the reasons that follow, Defendants' motion should be GRANTED.

**I.    Standard of Review**

Discovery in this case remains ongoing through March 10, 2021, with a dispositive motion deadline of April 12, 2021. However, Defendants filed a "first motion" for summary judgment on October 19, 2020, which motion has been fully briefed by the parties.

---

[1] Plaintiff alleges that he initially filed suit in the Butler County Court of Common Pleas but voluntarily dismissed on February 11, 2020. Plaintiff then re-filed suit in this Court, invoking diversity jurisdiction. The complaint filed in this Court contains numerous references to exhibits, but no exhibits are attached.

1

Because it is abundantly clear from the undisputed facts that Defendants are entitled to judgment as a matter of law on the basis of Hammer's absolute immunity for his statements, Defendants' motion should be granted.

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the non-moving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(e)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment—rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to survive summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986). The non-moving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The court determines whether the evidence

2

requires submission to a jury, or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see id.* at 255, he must present significant probative evidence tending to support the complaint. *First Nat'l Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575 (1968). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## II. Findings of Fact

Defendants' motion is supported by the following facts, which are undisputed by Plaintiff. (*See* Doc. 14-2; Doc. 16 at 1 "Plaintiff does not dispute the statement of facts provided by Defendants in the Motion.").

Defendant Hammer is an Ohio attorney and a current employee of McKenzie & Snyder. McKenzie & Snyder is a domestic limited liability partnership with a primary place of business in the City of Hamilton, Ohio. Before becoming associated with his current firm, Hammer worked as an attorney with Plaintiff Eric Deters at the Deters Law Office between January 2015 and February 2018, at which time he resigned.

Hammer previously had been interviewed by the Chief Assistant Disciplinary Counsel for the Supreme Court of Ohio, Joseph M. Caligiuri, in connection with that body's investigation of Plaintiff. Attorney Caligiuri requested that Hammer give an interview to the Office of Disciplinary Counsel for Kentucky regarding Hammer's experiences practicing law with Plaintiff. Caligiuri advised Hammer that it was his

3

responsibility as an attorney to cooperate with Carl Christiansen by answering questions that the Kentucky Bar Association ("KBA") had regarding Plaintiff. On May 15, 2018, in Cincinnati, Ohio, Hammer spoke to Carl Christiansen, investigator and agent of the KBA, in connection with Plaintiff's application for reinstatement to the Bar in the Commonwealth of Kentucky. In addition to the oral interview, Hammer provided a written statement to Christiansen and/or the KBA.

Plaintiff alleges that he did not learn of the May 15, 2018 statements, which Plaintiff alleges were defamatory, until August 28, 2018. (Complaint, Doc. 1 at ¶5). Plaintiff alleges he is a Kentucky resident who "is a retired Ohio attorney and victim's advocate and spokesperson for Deters Law." (Doc. 1 at ¶12). In his memorandum in opposition to the motion, Plaintiff additionally describes himself as "the office manager" of Deters Law Firm. (Doc. 16 at 10).

At present, Plaintiff remains unable to practice law for his namesake firm in any state. Although Plaintiff was permitted to retire from Ohio, he remains under suspension in Kentucky and in this Court.[2] See *Deters v. Ky. Bar Ass'n*. 646 Fed. Appx. 468, 470

---

[2]Plaintiff was permitted to retire from Ohio practice on September 17, 2014. He also attempted to retire from Kentucky but was prohibited from doing so under Kentucky Supreme Court Rule 3.480(1), which prohibits withdrawal from membership during the pendency of disciplinary proceedings. *Kentucky Bar Ass'n v. Deters*, 465 S.W.3d 30, 35 (Ky. 2015). His subsequent challenge to that rule was rebuffed for failure to state any claim in *Deters v. Ky. Bar Assoc.*, 130 F. Supp.3d 1038 (E.D. Ky. 2015). Plaintiff has been disciplined and suspended from the practice of law on multiple occasions; his September 2014 suspension from this Court remains in effect, as does his suspension in Kentucky. *See In Re Eric C. Deters*, Case No. 1:12-mc-042; *see also* https://www.kybar.org/members (accessed on January 29, 2021). Cases involving disciplinary proceedings and/or Rule 11 sanctions against Deters include: *Deters v. Ky. Bar Ass'n*, 646 Fed. Appx. 468 (6th Cir. April 28, 2016), *cert. denied,* 137 S. Ct. 496 (Nov. 28, 2016); *Deters v. Ky. Bar Ass'n*, 474 S.W.3d 299 (Ky. 2016); *Ky Bar Ass'n v. Deters*, 465 S.W.3d 30 (Ky. 2015); *Deters v. Ky. Bar Ass'n*, 130 F. Supp.3d 1038 (E.D. Ky. 2015); *Deters v. Ky. Bar Ass'n*, Case No. 1:14-cv-192 (S.D. Ohio 2014). *Kentucky Bar Ass'n v. Deters*, 406 S.W.3d 812 (2013), *cert. denied*, 134 S. Ct. 965 (Jan. 13, 2014); *Deters v. Ky. Bar Ass'n*, 408 S.W.3d 71 (Ky. 2012); *Ky. Bar Ass'n. v. Deters*, 360 S.W. 3d 224 (Ky. 2012); *Deters v. Kenton County*, 2012 WL 512588 (Ky. Ct. App. Feb. 17, 2012); *Deters v. Ky. Bar Ass'n*, 2011 WL 5837172 (E.D. Ky. Nov. 21, 2011), *aff'd*, Case No. 11-6524 (6th Cir. Dec. 10, 2012); *Deters v. Davis*, 2011 WL 2417055 (E.D. Ky. June 13, 2011); *Deters v. Davis*, 2011 WL 127166 (E.D. Ky. Jan. 14, 2011); *Deters v. Huebener*, 2009 WL 874607 (Ky. Ct. App. April 3, 2009). Plaintiff also has been suspended from the

(6th Cir. 2016) ("Since 2012, Deters has been suspended from the practice of law on multiple occasions for violations of the Kentucky Rules of Professional Conduct, including several instances of dishonesty…. Deters has unsuccessfully challenged the disciplinary process multiple times in both state and federal court.").

This lawsuit relates specifically to Plaintiff's unsuccessful attempt to obtain reinstatement in Kentucky.[3] Specifically, Plaintiff alleges that multiple statements made by Hammer during the course of his interview with Kentucky investigator Christiansen were false, and that Hammer knew that the statements were false when he made them. According to Plaintiff, Hammer's statements provided "the primary claims used against Plaintiff in his Kentucky reinstatement proceedings," and "were used against him by the Character & Fitness and the Board of Governors to recommend against his reinstatement." (Doc. 1 at ¶23).

Hammer has testified that he made the complained-of statements both to the KBA investigator and to two attorneys involved in an investigation conducted by the Ohio Bar Association. (Doc. 14-1, Affidavit at ¶¶8-11). An affidavit that reflects some of the statements made to the KBA, dated May 11, 2018, is attached as an exhibit to Defendants' motion for summary judgment. (See Doc. 14-3 at 31-32). The complaint contains a conclusory allegation that Hammer made similar statements to unidentified

---

practice of law in Florida. *See The Florida Bar v. Deters*, 118 So. 3d 808, 2013 WL 3388370 (Fla. June 27, 2013) (Table).

[3]The website for Deters Law is ericdeters.com. In a videotaped legal advertisement on that website, Plaintiff states "I may not be licensed to practice law at the moment. Why? I retired in Ohio and I'm in the process of being reinstated in Kentucky. But you know what? None of that matters. Why? I'm able to work on your case no matter what. So when you come to Deters Law, you get the bulldog, and the team that I assembled." *Id.*, (accessed on January 29, 2021, emphasis added).

"others" on unspecified dates, but Plaintiff has offered no evidence of other publication to anyone else on any date.

### III. Analysis

**A. Choice of Law**

Before discussing the merits of the pending motion, the undersigned must briefly address a choice of law issue. Defendants' motion relies primarily upon the assertion of absolute immunity under Ohio law, but also cites to Kentucky Supreme Court rules setting forth a similar privilege under Kentucky law. In his opposition to the motion, Plaintiff vehemently disputes the applicability of Kentucky law. According to Plaintiff, Hammer made the allegedly tortious statements in Ohio, Hammer resides and practices law in Ohio, and Plaintiff's federal lawsuit is based entirely on Ohio law for defamation and false light and not Kentucky law. With the exception of the noted brief reference to Kentucky Supreme Court rules, Defendants' motion also presumes the applicability of Ohio law. Because the parties only superficially discuss choice of law issues, the undersigned will keep this portion of the analysis brief.

Choice of law issues become relevant when the law of the competing jurisdictions is different. *See Mulch Mfg., Inc. v. Advanced Polymer Solutions, LLC,* 947 F.Supp.2d 841, 855 (S.D. Ohio 2013) (quoting *Wendy's Int'l, Inc. v. Illinois Union Insur. Co.*, No. 2:05-cv-803, 2007 WL 710242, at *5 (S.D. Ohio Mar. 6, 2007)). Here, a preliminary analysis suggests that differences may exist between the two jurisdictions for the claims asserted by Plaintiff in this case.[4]

---

[4] For example, claims for defamation and false light under Kentucky law must be filed within a one-year statute of limitations. *See* KRS 413.140. Given Plaintiff's allegations that the statements were made in May 2018 and discovered in August 2018, with this federal suit not filed until October 19, 2020, Kentucky's shorter limitations period could impact the outcome of suit.

6

Assuming differences exist, "[a] federal court sitting in diversity applies the choice-of-law rules of the forum state." *Mulch Mfg., Inc.*, 947 F.Supp.2d at 854 (citing *Pedicini v. Life Ins. Co. of Alabama,* 682 F.3d 522, 526 (6th Cir. 2012)). For tort claims filed under Ohio law, "a presumption is created that the law of the place of the injury controls.'" *Herndon v. Torres,* 249 F. Supp. 3d 878, 884 (N.D. Ohio 2017) (quoting *Friedman v. Intervet Inc.,* 2010 WL 2817257 at *8 (N.D. Ohio July 16, 2010)). Plaintiff suggests that the conduct causing the injury and the place of injury both occurred in Ohio, although at least some damages are alleged to have occurred in Kentucky after Kentucky denied Plaintiff's application for reinstatement. Defendants both reside in Ohio and conduct business in Ohio. One can infer from Plaintiff's allegations, as well as from publicly available state and federal court records, that Plaintiff conducts business in both Ohio and Kentucky. Considering the very strong interests of Ohio on the record presented concerning its grant of immunity to attorneys involved in judicial proceedings as well as the position of all parties that Ohio law applies, the undersigned concludes that Ohio law should in fact be applied.

**B. Defendants Are Entitled to Absolute Immunity**

Under Ohio law, Hammer is entitled to absolute immunity for the statements made. *See generally, Surace v. Wuliger*, 25 Ohio St.3d 229, 495 N.E.2d 939 (1986). In his opposition to Defendants' motion, Plaintiff posits that Ohio's immunity is limited "to inquiries before the Ohio Bar Association" and cannot extend to an Ohio attorney's statements if those statements, despite being made in Ohio, were used in an ongoing judicial proceeding in another state (Kentucky). Plaintiff's theory would hypothetically allow Hammer to claim absolute immunity for statements made during the course of the

7

Ohio disciplinary investigation but not for the identical statements that Hammer admittedly shared with the KBA investigator.

Unsurprisingly, Plaintiff cites to no authority to support his position, which the undersigned rejects as incompatible with Ohio law. Under that settled law, the key element is whether the statements were made in the context of "**a** judicial proceeding" – there is no additional jurisdictional qualifier that applies to defamation and false light claims filed under Ohio law.[5] In *Surace*, the Ohio Supreme Court explained the privilege in this way:

> [A]s a matter of public policy, under the doctrine of absolute privilege in a judicial proceeding, a claim alleging that a defamatory statement was made …does not state a cause of action where the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which it appears.

*Surace v. Wuliger*, 495 N.E.2d at 942-43.

KBA disciplinary proceedings are judicial proceedings. *See Deters v. Davis*, 2011 WL 127166 (E.D. Ky. Jan. 14, 2011) (holding that Plaintiff's constitutional challenges to ongoing state bar disciplinary proceeding were barred by the *Younger* abstention doctrine, because the Kentucky bar disciplinary proceeding was a state judicial proceeding); *see also*, generally *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515 (1982). The reinstatement proceeding is also a "judicial proceeding" because it examined whether the suspension previously imposed should continue, or whether Plaintiff should be reinstated.

---

[5] Ohio has consistently expanded the application of absolute immunity, from oral testimony to written statements made in judicial proceedings, and more recently to statements made in "quasi-judicial" proceedings such as a university's disciplinary hearing against a student. *See Savoy v. University of Akron*, 2014-Ohio 3043 15 N.E.430, 435 (Ohio Ct. App. 10th Dist. 2014).

8

Plaintiff's statements were provided to the KBA investigator (at the request of the Ohio Bar Association) in furtherance of Kentucky's judicial proceeding. The fact that the statements were made at the investigatory stage is of no consequence to the application of immunity. *See Hecht v. Levin*, 613 N.E.2d 585, 588, 66 Ohio St.3d 458 (Ohio 1993) (holding that a complaint filed with the grievance committee is part of a judicial proceeding); *Mootispaw v. Kiger*, 1997 Ohio App. LEXIS 1461 at *3 (Ohio Ct. App. 12th Dist. April 14, 1997) (holding that absolute privilege "extends to every step in the proceeding, from beginning to end."). Thus, Defendants are entitled to absolute immunity for all of Hammer's statements, because they occurred within the context of a judicial proceeding. *Accord Hecht*, 613 N.E.2d at 590 ("[A] statement made in the course of an attorney disciplinary proceeding enjoys an absolute privilege against a civil action based thereon as long as the statement bears some reasonable relation to the proceeding.").

Plaintiff's primary argument in opposition to the application of absolute immunity is meritless because it is contrary to settled Ohio law. He asserts that "the immunity does not apply because [the statements] were not made in good faith." (Doc. 16 at 2). Plaintiff maintains that Hammer made "false" statements because he was a disgruntled employee motivated by personal animus against Deters and a desire to financially benefit himself and his new employer.[6] (*Id*. at 7, 9).

---

[6]Plaintiff's theory of liability against McKenzie & Snyder, L.L.P rests on *respondeat superior* and the allegation that Hammer made the statements to promote his new firm's interests. Hammer's unrebutted interrogatory responses reflect that he did not initiate any contact with any Deters Law Firm client after leaving his employment, but that "[s]ome contacts contacted me because apparently Deters represented I was in bad health." (Doc. 14-3 at 50, Interrogatory 18). When contacted, Hammer advised "that I had moved on from the firm and I would be working for M&S. If asked, I would only advise that their options were to stay, follow me, or get a new lawyer." (*Id*.) Defendant's response to Interrogatory 19 reflects that four former/current clients of Deters Law ultimately retained Defendants instead of continuing with Deters. (*Id*. at 51).

Some eighty years ago in *Bigelow v. Brumley*, 37 N.E.2d 584, 138 Ohio St. 574 (Ohio 1941), the Ohio Supreme Court explained that the nature of the absolute privilege – as opposed to "qualified privilege" – is that an "absolute privilege protects the publisher of a false, defamatory statement even though it is made with actual malice, in bad faith and with knowledge of its falsity; whereas the presence of such circumstances will defeat the assertion of a qualified privilege." *Id*., 37 N.E.2d at 588, 138 Ohio St. at 579. Twenty-eight years ago in *Hecht*, the same court restated the doctrine this way:

> Because statements made in judicial proceedings enjoy an absolute privilege, we hold that a statement made in the course of an attorney disciplinary proceeding enjoys an absolute privilege against a civil action based thereon as long as the statement is relevant and material to the proceeding. The privilege exists irrespective of the relationship between complainant and attorney, and irrespective of whether the statement was made in bad faith.

*Hecht v. Levin*, 613 N.E.2d at 588.

The relevancy and materiality of Hammer's statements to the KBA disciplinary proceeding are uncontested. Every single one of the alleged statements relates to Plaintiff's fitness to practice law, and/or whether he should be reinstated to said practice. Plaintiff's damages rely upon the fact that the statements were used in the KBA's denial of his reinstatement. (*See* Doc. 1 at ¶ 23; *id*. at ¶27, "Defendant Hammer knew that Christiansen was an employee of the [KBA] and would publish his findings to members of the KBA.").[7]

---

[7]Although the complaint includes a conclusory allegation that Hammer repeated the statements to unspecified "others," Hammer's affidavit admits to making the statements only within the context of Ohio's or Kentucky's disciplinary proceedings, and Plaintiff has failed to cite to any other evidence of publication. *See Young v. Jones*, 122 Ohio App.3d 539, 544, 702 N.E.2d 445 (6th Cir. 1997) (affirming grant of summary judgment on defamation claim where plaintiff had failed to offer evidence that statements were made outside of grievance process).

10

For many decades in decisions like *Bigelow*, *Surace* and *Hecht*, the Ohio Supreme Court has consistently and repeatedly emphasized that absolute immunity (rather than qualified immunity) applies to statements like those made by Defendant Hammer in this case. "Although the result may be harsh in some instances and a party to a lawsuit may possibly be harmed without legal recourse, on balance, a liberal rule of absolute immunity is the better policy, as it prevents endless lawsuits because of alleged defamatory statements in prior proceedings." *Surace*, 25 Ohio St.3d at 234 (quoting *Justice v. Mowery*, 69 Ohio App.2d 75, 430 N.E. 960 (Ohio Ct. App. 10th Dist., 1980)).

Strong public policy supports Ohio's application of absolute immunity to statements made by judges and other lawyers about another lawyer or former lawyer seeking reinstatement:

> Just as we held in *Surace* that the truth-seeking process in litigation demands the free and unencumbered exchange of statements, so does the process of maintaining the ethical standards of the legal profession. A qualified privilege would open the door to retaliatory suits such as the one in this case and would chill the reporting of attorney misconduct. We believe to be overstated the warning that an absolute privilege will open a "Pandora's box" of grievances against attorneys. The attorney disciplinary process has been carefully designed to separate the wheat from the chaff. A grievance is kept private until a panel of the board makes a finding of probable cause and certifies it to the board. … Investigation and independent review of a grievance occur at several stages before this court makes its own independent determination of discipline. …These procedures assure that clearly frivolous complaints are summarily dismissed, with little emotional, professional, or financial toll on the subject of the complaint. For these reasons, we conclude that the balance between encouraging people to come forward with legitimate complaints and protecting attorneys from harassment is best struck by means of absolute immunity.
>
> In addition, judges and lawyers are obligated by their codes of ethics to report attorney misconduct of which they become aware. … The rule we adopt today encourages judges and attorneys to observe their codes of professional conduct without hesitation or fear of retaliation.

*Hecht v. Levin*, 613 N.E.2d at 589 (internal citations omitted). Consistent with *Hecht*, Hammer testified that he provided the challenged statements in accordance with his ethical obligations as a practicing attorney in Ohio.

Plaintiff's remaining argument against the application of absolute immunity is equally without merit. Plaintiff argues that no privilege applies to Hammer's statements because Plaintiff is merely "an employee of Deters Law and a victim's advocate, not ...a lawyer." (Doc. 16 at 2). However, the fact that Plaintiff failed to obtain reinstatement to the bar does not change the character or context of the statements, all of which were made within the context of the KBA's disciplinary proceedings in Plaintiff's quest for reinstatement. In any event, as previously stated, the Ohio privilege applies to statements made against any person in any judicial proceeding. *See*, generally, *Elling v. Graves*, 94 Ohio App.3d 382, 640 N.E,2d 1156 (Ohio Ct. App. 6th Dist., 1994) (absolute privilege applied to statements made in psychological report used in civil custody dispute).

### C. Consideration of Sanctions

Many pro se litigants seek to file their federal complaints without payment of fees. In those instances, Congress has given courts authority to screen out frivolous or malicious litigation at the very earliest stages, at the time the complaint is filed and prior to service upon any Defendant. *See* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990). That includes cases in which the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. Thus, through the type of preliminary

screening authorized under § 1915, the strain on judicial resources (as well as on the defendants) is lessened by early dismissal.

Here, Plaintiff is not a pauper and avoided any initial screening under 28 U.S.C. § 1915(e) by paying the requisite filing fee. However, his extensive litigation experience and history suggests that he either knew, or should have known, that absolute immunity barred the instant lawsuit. Therefore, the undersigned is compelled to raise the question as to whether some sanction should be imposed in this case, particularly in light of other cases in which Plaintiff has been sanctioned for filing suit against those who are absolutely immune for all claims. *See, e.g., Deters v. Schweikert*, Case No. 1:19-cv-204, 2019 WL 2290650 at * 8 (S.D. Ohio May 6, 2019) (recommending issuance of *sua sponte* order directing pro se Plaintiff to show cause why a monetary sanction should not issue based upon "patently frivolous claims and arguments" in clear violation of Rule 11), adopted at 2019 WL 2289150; *see also Deters v. Ky. Bar Ass'n*, 130 F. Supp.3d 1038, 1048 (E.D. Ky 2015); *Deters v. Davis*, 2011 WL 2417055, at *5 (imposing *sua sponte* Rule 11 sanctions against Deters at a time when he was proceeding pro se rather than as an attorney in a representative capacity).

Even if a litigant pays a filing fee, if he repeatedly files frivolous or malicious lawsuits, this Court may deem him to be a vexatious litigant, and impose pre-filing restrictions to reduce the burden that such litigation places on judicial resources. *See Stewart v. Fleet Financial*, 229 F.3d 1154, 2000 WL 1176881 (6th Cir. 2000) (citing *Feathers v. Chevron U.S.A.*, 141 F.3d 264, 269 (6th Cir. 1998)). Additionally, Plaintiff previously has been sanctioned under Rule 11, which exists as a check on the

filing of even a single frivolous lawsuit. Rule 11(b) states that by filing a pleading, the party

> certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery....

*Id.*

If a pro se litigant fails to comply with Rule 11, a court "may impose [any] appropriate sanction." *See* Rule 11(c). A court may impose sanctions on its own initiative, after directing the party "to show cause why conduct specifically described in the order has not violated Rule 11(b)." *See* Rule 11(c)(3); *Deters v. Schweikert*, 2019 WL 2290650 at * 8. If imposed, a sanction "must be limited to what suffices to deter repetition of the conduct" and "may include nonmonetary directives [or] an order to pay a penalty into court." Rule 11(c)(4).

Plaintiff's conduct in the case of *Deters v. Schweikert* was more reprehensible insofar as he had filed suit alleging the same patently-frivolous claims (against another immune defendant) that had been dismissed by other courts. In the case presented, Plaintiff voluntarily dismissed an earlier version of his lawsuit in state court, but there does not appear to be a prior state or federal court ruling rejecting the exact same type of

14

defamation claims against a defendant who is immune from suit. In addition, this case is being dismissed on summary judgment rather than under Rule 12, Fed. R. Civ. P.

Still, Plaintiff is skating on thin ice. Plaintiff has filed suit against defendants who enjoy absolute immunity on multiple occasions, including this case, and either fails to understand or willingly disregards that clear legal doctrine. Therefore, the undersigned recommends consideration of two non-monetary sanctions: (1) an express warning to Plaintiff that filing a further lawsuit against any defendant who enjoys absolute immunity may result in sanctions, including but not limited to a declaration that Plaintiff is a vexatious litigator; and (2) requiring Plaintiff to provide a pre-filing certification by a licensed attorney prior to initiating another pro se suit that, under existing law or other non-frivolous argument, the named defendant(s) are not immune from suit.

## IV. Conclusion and Recommendation

For the reasons stated, it is **RECOMMENDED THAT:**

(1) Defendants' motion for summary judgment (Doc. 13) be **GRANTED** and that this case be dismissed;

(2) The Court consider whether the non-monetary sanctions discussed above should be incorporated into any order of dismissal.

        *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ERIC C. DETERS

    Plaintiff,

    v.

MATTHEW HAMMER, et al.,

    Defendants.

Case No. 1:20-cv-00362

Black, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).